[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16492
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 1, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-80023-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS EDWARD BOHANNON,
a.k.a. A0409virgo,
a.k.a. smuffin219,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 1, 2007)**

**ON PETITION FOR REHEARING**

Before ANDERSON, BARKETT and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Appellant's petition for panel rehearing is GRANTED. We VACATE our prior opinion in this case and substitute the following in its place.

Thomas Edward Bohannon appeals his 120-month sentence for use of the internet to entice a minor into sexual activity, in violation of 18 U.S.C. § 2422(b). On appeal, Bohannon argues that the district court erred in calculating his offense level when it (1) applied U.S.S.G. § 2G1.3(c)(1)'s cross-reference to U.S.S.G. § 2G2.1, which yielded a higher base offense level than the one recommended in the presentence investigation report, based on the court's finding that Bohannon intended to produce a visual depiction of sexually explicit conduct with a minor, and (2) applied a 2-level enhancement because the victim was between 12 and 16 years old, pursuant to U.S.S.G. § 2G2.1(b)(1)(B). He also argues that his sentence, which was below the 135-to-168-month advisory range he faced, was unreasonable in light of the factors outlined in 18 U.S.C. § 3553(a). After careful review, we affirm.

We review a district court's interpretation of the Guidelines de novo and its findings of fact for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). After a district court has calculated a defendant's advisory Guidelines range, it "may impose a more severe or more lenient sentence," which we review only for reasonableness. United States v.

2

Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). In conducting our reasonableness review, which is highly deferential, we do not apply the reasonableness standard to each individual decision made during the sentencing process; instead, we review only the final sentence for reasonableness, in light of the § 3553(a) factors. United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006). The district court need not state on the record that it has explicitly considered each factor and need not discuss each factor. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). Rather, an acknowledgment by the district court that it has considered the defendant's arguments and the § 3553(a) factors will suffice. Id.

The facts relevant to Bohannon's sentencing claims are these. On March 3, 2005, Bohannon was indicted for knowingly and intentionally using the internet, a means of interstate commerce, to entice a minor into sexual activity, in violation of 18 U.S.C. § 2422(b). Bohannon pled guilty to the charge and proceeded to sentencing.

According to the presentence investigation report ("PSI"), a police officer acting in an undercover capacity, entered an online chat room entitled "i love much older men." The officer posed as a 15-year-old female named "Dana," and, shortly after entering the chat room, was contacted by Bohannon. Bohannon expressed

3

sexual interest in "Dana," though he said he had never been with a girl as young as her. Bohannon then said that he and "Dana" would have to be careful because he was much older and did not want either of them to get into trouble. Bohannon asked about "Dana's" sexual experience and expressed interest in having both oral and genital sex with her.

About two weeks later, Bohannon and "Dana" chatted online again, and, at Bohannon's suggestion, agreed to meet. Bohannon discussed getting a room so they could engage in sexual activities, including genital and oral sex, and again stressed that they had to be careful because he could go to jail for a long time due to her age. The next week, they chatted still again and discussed meeting at a McDonald's on Lantana Road in Lantana, Florida. Bohannon planned to drive from Orlando to Lantana and told "Dana" that he would get a hotel room. Bohannon also sent "Dana" a picture of himself and indicated that he would bring the hat he was wearing in the picture and a red rose to the meeting at the McDonald's.

Law enforcement officers subsequently arranged surveillance at the designated meeting place and time. The surveillance officers observed Bohannon -- who was identified from the picture he sent to "Dana" during one of his chats and by the vehicle he drove, which was registered in his name -- walk into the

4

McDonald's, and then arrested him. The police inventoried his vehicle and found several condoms, a package of erectile dysfunction medication, a red rose, the hat he wore in the photograph he sent to "Dana," and a digital camera.

A search of Bohannon's house, pursuant to a search warrant, uncovered two computers containing evidence of the chats with "Dana" and chats with numerous other girls who said they were under 18 years old. A photograph of an actual 16-year-old girl was recovered, as were four photographs showing a girl, who had stated in chats with Bohannon that she was 17 years old, in various stages of undress. The PSI stated that the chats between Bohannon and the 17-year-old "were very sexual in nature," and that in response to the girl's question of whether her age mattered to Bohannon, he responded, "cool i like young girls." The computers also contained images of bestiality and sexual pictures Bohannon took of women he met through the internet and with whom he had sex.[1]

Pursuant to U.S.S.G. § 2G1.3(1), Bohannon's base offense level was a 24. The PSI recommended a 2-level upward adjustment because the offense involved the use of a computer, U.S.S.G. § 2G1.3(b)(3), and a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a), (b), which yielded an adjusted

---

[1] The PSI also stated that the computer contained "one confirmed image of child pornography. However, at the sentencing hearing, the district court reviewed the image and was unable to determine the age of the female participant. Accordingly, the court refused to make a finding on the issue and did not rely on an image of child pornography in its sentencing calculus.

offense level of 23.  With a criminal history category I, Bohannon's advisory sentencing range was 46 to 57 months imprisonment.  Because Bohannon also faced a statutory minimum term of five years, 18 U.S.C. § 2422(b), his Guidelines range became 60 months imprisonment.  See U.S.S.G. § 5G1.1(b) (providing that the statutorily required minimum sentence shall be the Guidelines sentence if it is greater than the maximum of the applicable Guidelines range).

Seven days after the deadline for filing objections to the PSI, the government filed an objection and a motion for leave to file the objection out of time, arguing that the PSI should have applied the cross-reference in U.S.S.G. § 2G1.3(c)(1), which directs the application of § 2G2.1 if the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction. The government asserted that application of the cross-reference yielded a base offense level of 32, which should then be increased by 4 levels based on the age of the child.  With a 2-level reduction for acceptance of responsibility, Bohannon's adjusted offense level would be a 34 rather than the PSI's recommended 23.  In support of applying the cross-reference, the government argued that the preponderance of the evidence showed that Bohannon intended to take pictures of "Dana" because he had a history of taking sexually explicit photographs, as evidenced by the contents of the two computers seized at his house, and arrived at

6

the meeting place with a digital camera in his vehicle, along with a rose and erectile dysfunction medication.

At the sentencing hearing, the government introduced a police report of the forensic examination of Bohannon's computers. The report included a list Bohannon kept of approximately 90 women, their chat names, and the number of times he had had sex with each of them. The report also contained images which were printed from Bohannon's computer and showed him engaged in sexual activities with some of the women from the list. The government argued that this evidence, along with the digital camera found in his vehicle at the scene of the planned meeting with "Dana," established, by a preponderance of the evidence, his intent to take images of sexual activity with "Dana."

Over Bohannon's objection, the district court agreed, holding that Bohannon had intended to take pictures of himself engaged in sexual activity with a girl whom he believed was 15 years old. The district court found that the evidence in the government's exhibits demonstrated Bohannon's propensity to take pictures of his sexual encounters with females. The court noted that although mere possession of the camera would not be enough to trigger the cross-reference, the combination of the camera and Bohannon's tendency to catalog his sexual activity enabled the government to meet its burden.

The district court ruled that the cross-reference applied and calculated a base offense level of 32, pursuant to U.S.S.G. § 2G2.1. The base offense level was increased by 2 levels, pursuant to U.S.S.G. § 2G2.1(b)(1), because the offense involved a minor between the ages of 12 and 16, and by another 2 levels, pursuant to U.S.S.G. § 2G2.1(b)(6), because the offense involved the use of a computer. With the 3-level reduction for acceptance of responsibility, Bohannon's adjusted offense level was 33, and his Guidelines range was 135 to 168 months imprisonment.

After restating his objections to application of the cross-reference and the enhancement for the specific offense characteristic based on the age of the child, as represented by the undercover officer during the chat sessions, Bohannon requested a sentence below the Guidelines range, arguing that a sentence approximating the statutory minimum would be more appropriate. Bohannon highlighted that he was a first-time offender who had worked hard all of his life and that his behavior had shocked his family and did not reflect the life he led. Bohannon also submitted letters from family members and friends, all of whom attested to Bohannon's good character and work ethic.

The government requested a sentence at the low-end of the court-calculated Guidelines range, arguing that Bohannon had a well-developed plan to have sex

8

with a minor and that, had he not been caught, this would not have been a one-time offense.

The district court noted that the Guidelines range was advisory and discussed its obligation to examine the factors set forth in 18 U.S.C. § 3553(a) and to determine a reasonable sentence. It then discussed the § 3553(a) factors as follows:

> Looking at the factors set forth in 3553(a), first the need of a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment for the offense, and it seems to me that all of those factors . . . call for a serious sentence in this case, to afford adequate deterrence to criminal conduct.

> Well I suppose there are two aspects of that. First, to deter Mr. Bohannon from engaging in criminal conduct. My sense is Mr. Bohannon would never do this again. Irrespective of his views of sexual involvement, there are lots of people out there who are willing partners, nothing illegal about it, and what became illegal is when he crossed that line of agreeing and wanting to engage in sexual activity with a minor. There is also the question, of course, of imposing a sentence that has a deterren[t] impact to others, other people understanding the seriousness of this.

> . . . .

> I think when you look at a man of 53 years of age who has not engaged in other criminal conduct, who has led a life that has been free of any criminal involvement, that has to be considered. Now, I understand the argument that everyone starts out in a category one, but this is a factor that the court needs to look at.

> To provide the defendant with needed educational or vocational training or, in this case, other treatment, I think when you look at

9

what is going on here, as I said before, I don't pretend to be any type of a psychologist, but when someone has had the life that Mr. Bohannon has, and, suddenly, you have this pronounced involvement, serial involvement with multiple sexual partners, there is more going on, and it is a psychological problem . . . .

I am going to impose a sentence that I think is appropriate to meet the requirements that I talked about, and I am placing particular emphasis on the fact that Mr. Bohannon is a first time offender, and I do not think a sentence in excess of that which will be imposed is necessary to deter him from further criminal conduct.

The district court then sentenced Bohannon to a term of 120 months imprisonment. This appeal followed.

First, Bohannon argues the district court erred by enhancing his offense level pursuant to the cross-reference in § 2G1.3. Bohannon was convicted of violating 18 U.S.C. § 2422(b), for which the appropriate Sentencing Guideline is § 2G1.3. The relevant cross-reference directs that "[i]f the offense involved causing . . . or offering . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 . . . if the resulting offense level is greater than that determined above." U.S.S.G. § 2G1.3(c)(1).[2]

_____

[2] The cross-reference, in full, reads this way:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined

10

This cross-reference "is to be construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering . . . ." U.S.S.G. § 2G1.3, comment. (n. 5(A)). Moreover, "[t]he term 'offense,' as used in the cross-reference, includes both charged and uncharged offenses." United States v. Miller, 166 F.3d 1153, 1155 (11th Cir. 1999) (per curiam). The burden is on the government to prove the factors that trigger the cross-reference by a preponderance of the evidence. United States v. Whitesell, 314 F.3d 1251, 1255 (11th Cir. 2002).

Here, the district court's finding that a preponderance of the evidence showed Bohannon had the intent to offer and to take pictures of himself engaged in sexually explicit conduct with a minor, namely oral-genital and genital-genital sex,

---

above.

U.S.S.G. § 2G1.3(c)(1). And the applicable commentary provides as follows:

> **Application of Subsection (c)(1)**.--The cross reference in subsection (c)(1) is to be construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice, advertisement or other method, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. For purposes of subsection (c)(1), "sexually explicit conduct" has the meaning given that term in 18 U.S.C. § 2256(2).

Id. at cmt. n.5.

is a factual finding and, accordingly, is reviewed for clear error.[3] Viewing the record in its entirety, we cannot conclude that this finding was clearly erroneous. Bohannon had a digital camera in his car, as well as a history of photographing his sexual encounters. Indeed, the district court reviewed a government exhibit that catalogued a variety of Bohannon's computer files including numerous photographs he had taken of sexual encounters with women. The district court was careful to note that the mere presence of the camera itself would not have been sufficient but that the camera, in concert with the evidence of Bohannon's propensity to take pictures of his sexual encounters, enabled the government to meet its burden. On this record, we discern no clear error in the district court's

---

[3]For purposes of the cross-section, "sexually explicit conduct" is defined, in pertinent part, as "actual or simulated"--

   (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of any person;

18 U.S.C. § 2256(2)(A) (2006).

factual findings, nor can we find an error of law in its application of the cross-reference based on those findings.

We likewise are unpersuaded by Bohannon's argument that the district court erred by enhancing his offense level, pursuant to U.S.S.G. § 2G2.1(b)(1), because the undercover officer represented "Dana's" age as 15 years old. More specifically, Bohannon asserts that because the undercover officer selected the victim's age in the context of a sting operation, the enhancement based on the age of the victim constituted impermissible "sentencing manipulation."

"A sentencing factor manipulation claim requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, . . . or due process claim, . . . must sometimes be filtered out of the sentencing calculus." United States v. Williams, 456 F.3d 1353, 1370 (11th Cir. 2006) (internal quotation omitted). A sentencing-factor manipulation claim alleges that "a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." United States v. Sanchez, 138 F.3d 1410, 1414 (11th Cir. 1998) (rejecting such a claim where the government arranged a reverse sting operation in which the defendants agreed to participate in the theft of a large amount of drugs from a home and observing that "[t]he fact that the government's

13

fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing").

Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two-level increase to the base offense level if the offense involved a minor who was at least 12 years old but not yet 16 years old. In this case, the "victim" was an undercover agent posing as a 15-year-old girl in an online chat room. The commentary to § 2G1.3 expressly defines the term "minor" as including: "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." U.S.S.G. § 2G1.3 cmt. n.1. The evidence shows that Bohannon believed he was interacting with a 15-year-old girl and knew the consequences of engaging in sexual activity with a minor of this age, as he stated numerous times that he would have to be careful not to get caught, given the stiff penalties he faced due to "Dana's" age. Moreover, his computer also revealed numerous seductive pictures of others with whom Bohannon had sexual encounters. Simply put, under these circumstances, the government's conduct in choosing an age for "Dana" was no more manipulative than in any other sting operation, and the district court correctly applied the two-level increase for the fictitious victim's age.

Finally, Bohannon argues his sentence was unreasonable because the district court did not give adequate consideration to his status as a first-time offender, a father, a hard worker, and a person of good character. We disagree.

Our reasonableness review is "deferential," and the burden of proving that the sentence is unreasonable in light of the record and the § 3553(a) factors rests on the party challenging the sentence. United States v. Valnor, 451 F.3d 744, 750 (11th Cir. 2006). Although a sentence within the Sentencing Guidelines range will not be considered per se reasonable, "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 787-88; see also United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006) (holding that there is no "across-the-board prescription regarding the appropriate deference to give the Guidelines" but that a district court may have good reason to follow the Guidelines in a particular case).

Here, the district court considered Bohannon's arguments for a lesser sentence but was persuaded to impose a harsher sentence because of the seriousness of the crime. The district court imposed a sentence below the court-calculated Sentencing Guidelines range, rejecting the government's request for a higher sentence and specifically recognizing that Bohannon had no criminal history and probably would not commit another offense. Thus, the district court's

ruling reflects consideration of the § 3553(a) factors, including: the nature and circumstances of the offense; the history and characteristics of Bohannon; the advisory Sentencing Guidelines range; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.[4]  Moreover, the district court explicitly discussed the application of

---

[4]The section 3553(a) factors, in full, are the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

16

the § 3553(a) factors as necessary to determine a reasonable sentence. We also note that the sentence imposed was well below the statutory maximum sentence of 30 years' imprisonment that Bohannon faced under the applicable version of 18 U.S.C. § 2422(b).[5] On this record, Bohannon cannot contend that the district court failed to consider any relevant factors expressed by Congress, nor has he met his burden of showing that the district court imposed an unreasonable sentence.

**AFFIRMED.**

---

(5) any pertinent policy statement--
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[5] We note in passing that Congress has since increased both the statutory minimum, from 5 to 10 years imprisonment, and the statutory maximum, from 30 years to life imprisonment, for Bohannon's offense. See Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 203, 120 Stat. 587, 613 (effective July 27, 2006).