PRYOR, Circuit Judge:
The main question presented by this appeal involves the reasonableness of the sentence of a young adult who was arrested in a sting operation that involved the armed robbery of a fictional stash house of cocaine and who later threatened a witness who testified against him. The question is whether the district court abused its discretion when it sentenced John Andrew Docampo Jr. to a term of imprisonment of 270 months, instead of the mandatory minimum term of 180 months that he requested, even though some conspirators pleaded guilty and received less severe federal sentences and other conspirators who were juveniles when arrested pleaded guilty as adults in state court and received terms of probation. At trial, Docampo was convicted of charges involving a conspiracy to possess and distribute cocaine and possession of a firearm in furtherance of that conspiracy. The district court sentenced Docampo to a term of 210 months, which was within the guidelines range, for the conspiracy charges and a consecutive mandatory minimum term of 60 months for possession of the firearm. Because the other conspirators either pleaded guilty and agreed to cooperate or were not prosecuted in federal court, we conclude that they are not similarly situated to Docampo and any disparity in sentences is warranted. See 18 U.S.C. § 3553(a)(6). Docampo’s sentence is reasonable. Because Docampo’s other arguments about the admission of hearsay, sentencing factor manipulation, and his request for a minor role reduction all fail, we affirm his convictions and sentences.
I. BACKGROUND
The sting operation was conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. On September 21, 2005, undercover agent Richard Zayas met Isail Reyes through a confidential informant. During the meeting, Reyes arranged for Agent Zayas to purchase a firearm from Christian Carmona. Agent Zayas again met with Reyes and the confidential informant on September 27 to discuss purchasing additional firearms and narcotics. During that meeting, Reyes stated that he had experience committing robberies that involved cocaine and could find other individuals with similar experience to assist him in a robbery.
On October 17, Agent Zayas met Reyes again, under the guise of purchasing a firearm, and told Reyes about a house used to store large amounts of cocaine. Agent Zayas asked if Reyes was interested in robbing the stash house. Reyes met *1094 with Agent Zayas on October 26 and agreed to rob the stash house.
On November 1, Agent Zayas and the confidential informant met with Reyes, Sebastian Luengas, and Louis Alex Gutierrez to discuss the robbery. Agent Zayas provided information about the stash house, including the procedure for delivering cocaine and the number of armed individuals inside the house. According to Agent Zayas’s testimony, Reyes, Gutierrez, and Luengas “became animated and engaged in conversation as to their plan as to how they were going to commit the robbery.” They discussed being armed and the possibility of killing persons inside the house. Agent Zayas testified, “They stated they had pistols available at that point, but that they wished to obtain a rifle to also assist them in the robbery.”
Agent Zayas agreed to meet Reyes and all other participants at Reyes’s residence on November 3 to depart for the robbery. On that day, Agent Zayas sent the confidential informant to Reyes’s residence to tell Reyes and the other individuals present, including Docampo, to meet Agent Zayas at Albertson’s grocery store. Reyes, the confidential informant, Gutierrez, Luengas, Docampo, Carmona, and Davin Powell arrived at the grocery store in two vehicles and parked next to each other. Agent Zayas stood between the two vehicles and, through the open windows, provided information about the stash house to the individuals in the vehicles.
Docampo left one of the vehicles, approached Agent Zayas, and engaged the agent in a conversation about the robbery. Agent Zayas testified that Docampo “took over the conversation and began to express his views of how he saw the robbery.” According to Agent Zayas, Docampo “began to say what should occur, based upon his experience. He stated that ... he had been involved in [robberies] before.”
After the conversation with Docampo, Agent Zayas confirmed that all present wanted to participate in the robbery, and Agent Zayas instructed them to follow him to a warehouse where they would later deliver his portion of the proceeds from the robbery. Docampo shook hands with everyone in the vehicle, and Agent Zayas then led the two vehicles to a storage facility. When they arrived at the storage unit, Agent Zayas told Reyes that he had received a page from the individuals at the stash house and went to make a phone call.
The tactical team attempted to surround and arrest the suspects, but the agents were unable to secure one avenue of escape. Reyes, along with Agent Zayas, ran from the area. While Reyes was attempting to elude the agents, Agent Zayas saw him remove a pistol from his pants and throw it over the perimeter wall of the storage facility. Reyes was arrested later by the Sheriffs Office of Hillsborough County. Docampo, Carmona, Luengas, Gutierrez, and Powell were arrested at the scene.
Docampo, Gutierrez, and Reyes were indicted for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), (b)(l)(A)(ii), possession of firearms in furtherance of the conspiracy, 18 U.S.C. § 924(c)(1)(A), and conspiracy to possess firearms in furtherance of a drug trafficking crime, id. § 924(o). The charges of drug conspiracy and firearm possession against Docampo were dismissed based on violations of the Speedy Trial Act, but Docampo, Gutierrez, and Reyes were indicted again a month later on identical charges.
Gutierrez and Reyes pleaded guilty and testified against Docampo. Powell, Luengas, and Carmona were juveniles when arrested, but were prosecuted in state court as adults. Luengas and Powell pleaded guilty and were sentenced to *1095 terms of probation. Carmona was killed in an unrelated crime.
At trial, Docampo was convicted of all charges. Edwardo Lorenzo testified that Luengas, in the presence of Docampo, invited him to participate in a robbery and, when he declined the invitation, Docampo asked if he could borrow a gun from Lorenzo. Lorenzo identified the gun that Reyes threw behind the wall of the storage facility as the firearm Lorenzo lent Docampo. Lorenzo also testified about a phone call Docampo made to Lorenzo’s girlfriend during which Docampo told Lorenzo’s girlfriend that “[e]ither bad things would happen to [Lorenzo] or somebody that [he] was close to if [he] was to testify.” Docampo objected to the testimony as hearsay, but the district court overruled the objection. Powell testified that Docampo was a willing participant in the planning of the robbery of the stash house. Gutierrez testified that Docampo brought a gun with him on the day of the robbery and volunteered to take a more active role in the robbery. Video and audio evidence of the meetings confirmed the testimonies of Agent Zayas and the other witnesses.
The presentence investigation report stated that, based on the amount of cocaine involved, Docampo had a base offense level of 34, which was increased by two levels for obstruction of justice based on the threat to Lorenzo’s girlfriend. The report provided a total offense level of 36, a criminal history of I, a guideline range of 188 to 235 months of imprisonment for the conspiracy charges, and a consecutive mandatory minimum sentence of 60 months of imprisonment for the charge of possession of a firearm. Docampo challenged the enhancements, argued that he was a victim of sentencing factor manipulation, and sought a reduction in his offense level based on his minimal role.
At Docampo’s sentencing hearing, Dr. Michael Maher testified that, when the sting operation occurred, Docampo functioned at the level of a 16- or 17-year-old instead of his actual age of 18 and was more inclined to engage in risky and morally questionable behavior than a young adult. Dr. Maher testified that Docampo was easily susceptible to the robbery scenario, but knew the difference between right and wrong and understood the legal consequences of bringing a firearm to a robbery. Reyes testified that Docampo was not supposed to participate in the robbery, but showed up and insisted that he had experience with robberies and wanted to participate.
Before the sentencing hearing, Docampo filed a sentencing memorandum in which he admitted that he had called Lorenzo’s girlfriend before trial and was upset about Lorenzo testifying against him. Docampo also admitted that he had called Lorenzo’s girlfriend back five or ten minutes later to apologize. At the sentencing hearing, Agent Michael Gistinger testified that he spoke to Lorenzo about the threatening phone call Docampo made to Lorenzo’s girlfriend. Agent Gistinger also spoke to Lorenzo’s girlfriend, who was reached at a phone number provided by Lorenzo, and she confirmed that she had received two calls from Docampo. Agent Gistinger testified that Docampo threatened Lorenzo and his family if he testified, and both Lorenzo and his girlfriend felt threatened.
The district court sentenced Docampo to 210 months of imprisonment for the conspiracy counts to be followed by the mandatory minimum sentence of 60 months of imprisonment for the firearms conviction. Docampo requested that the district court impose a sentence of 180 months, which was comprised of a mandatory minimum term of 120 months for the conspiracy charges and a mandatory minimum term of 60 months for the charge of possession of a firearm. The district court denied Docampo’s request and stated that it had *1096 considered “the advisory sentencing guidelines and all of the factors identified in Title 18 United States Code, Section 3553(a)(1) through (7)” and concluded “that the sentence imposed [was] sufficient but not greater than necessary to comply with the statutory purposes of sentencing.”
II. STANDARDS OF REVIEW
Several standards of review govern this appeal. “We review evidentiary rulings for an abuse of discretion.” United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir.2005). Even if the ruling was an abuse of discretion, it will not result in a reversal of the conviction if the error was harmless. United States v. Church, 955 F.2d 688, 700 (11th Cir.1992). Factual findings that underlie the sentence, including the defendant’s role in the offense, are reviewed for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir.1999) (en banc). We review de novo the application of the Sentencing Guidelines to those facts by the district court. United States v. Massey, 443 F.3d 814, 818 (11th Cir.2006). We review a criminal sentence for reasonableness. United States v. Booker, 543 U.S. 220, 261, 125 S.Ct. 738, 765-66, 160 L.Ed.2d 621 (2005). “The reasonableness of a final sentence is reviewed only for an abuse of discretion.” United States v. Williams, 526 F.3d 1312, 1321 (11th Cir. 2008) (per curiam). “Review for reasonableness is deferential.” United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005) (per curiam). This deferential review evaluates “whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a).” Id.
III. DISCUSSION
Our discussion is divided in three parts. First, we address whether the admission of the testimony of a witness at trial was error sufficient to warrant reversal of Docampo’s conviction. Second, we discuss Docampo’s challenges to the calculation of his sentence. Third, we consider the reasonableness of Docampo’s sentence. We do not discuss Docampo’s argument that his sentence is unconstitutional because it was enhanced based on facts not proved to a jury beyond a reasonable doubt; that argument is foreclosed by precedent. See United States v. Thomas, 446 F.3d 1348, 1354-55 (11th Cir.2006).

A. The Error of Admitting Hearsay About Docampo’s Threat Was Harmless.

Docampo argues that the district court erred when it allowed Lorenzo to testify about the threatening phone call that Docampo made to Lorenzo’s girlfriend. Lorenzo’s girlfriend did not testify. Docampo objected to Lorenzo’s testimony as hearsay, but the district court overruled the objection.
We agree with Docampo that Lorenzo’s testimony about the threat was hearsay. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted” and is inadmissible unless the statement falls within an exception or exclusion provided by the Federal Rules of Evidence. Fed.R.Evid. 801. Because Lorenzo testified about a statement made by his girlfriend that was offered to prove that Docampo made threats against Lorenzo, the statement was hearsay. The district court stated that it allowed the testimony because Docampo had “opened up the door,” but on appeal the parties agree that Docampo had not invited this testimony.
The government contends that the testimony is excluded from the prohibition against hearsay because Lorenzo’s girlfriend was acting as Docampo’s agent when she made the statement and, alternatively, Docampo had authorized the state *1097 ment when he spoke with Lorenzo’s girlfriend, but we disagree. Although the Federal Rules of Evidence permit the admission of statements made by an agent of the defendant, Fed.R.Evid. 801(d)(2)(D), or statements that are authorized by the defendant, id. 801(d)(2)(C), the government did not lay a foundation that Lorenzo’s girlfriend was acting as Docampo’s agent or that Docampo authorized the statement. The statements “are not alone sufficient to establish the declarant’s authority under [Rule 801] subdivision (C) ... [or] (D).” Fed.R.Evid. 801(d)(2). Because the testimony is hearsay and is not excepted under Rule 801, the district court abused its discretion when it admitted Lorenzo’s testimony about the phone call.
Although Lorenzo’s testimony about his girlfriend’s statement was inadmissible hearsay, we agree with the alternative argument of the government that the error is harmless. The admission of hearsay “alone ... does not mandate a reversal of conviction: ‘[t]o require a new trial ... [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the ... statement had a substantial impact upon the verdict of the jury.’ ” United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir.2006) (per curiam). The government offered testimony by Agent Zayas and four cohorts about Docampo’s involvement in the crime, an audiotape and video of Docampo’s conversation with Agent Zayas on the day of the planned robbery, and a tape of Docampo’s statements from his post-arrest interview. The hearsay did not have a substantial impact on the verdict.

B. The District Court Correctly Calculated Docampo’s Sentencing Range.

Docampo challenges the calculation of his sentencing range on three grounds. First, Docampo argues that he was entitled to a reduction based on sentencing factor manipulation. Second, Docampo asserts that the district court erred when it enhanced his sentencing range based on obstruction of justice. Third, Docampo argues that he was entitled to a reduction based on his minimal role in the offense. These arguments fail.
1. Sentencing Factor Manipulation
Docampo argues that the district court erred when it refused to sentence him below the statutory mandatory minimum based on sentencing factor manipulation. Docampo argues that his sentence was manipulated by the conduct of the federal agents. Docampo argues that Agent Zayas “expanded the scope” of the original sting operation to include persons “unknown to him.” Docampo also argues that the inclusion of juveniles and Docampo, a young adult, in the sting amounted to sentencing factor manipulation by the government.
“[Sentencing factor manipulation occurs when the government’s manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus.” United States v. Ciszkowski, 492 F.3d 1264, 1270 (11th Cir.2007). “[S]entencing factor manipulation focuses on the government’s conduct.” United States v. Sanchez, 138 F.3d 1410, 1414 (11th Cir.1998); Ciszkowski, 492 F.Sd at 1270. The defendant must establish “that the government’s conduct is sufficiently reprehensible[,]” and this “standard ... is high.” Ciszkowski, 492 F.3d at 1271. “[T]o bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct.” Id. We have not yet recognized a defense of sentencing factor manipulation or permitted its appli *1098 cation to a defendant’s sentence, and we do not do so in this appeal. Id.; United States v. Williams, 456 F.3d 1353, 1371 (11th Cir.2006), abrogated on other grounds by Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (“This is not to say that sentencing manipulation may never be a valid consideration in sentencing.”).
Even if a sentence can be reduced based on sentencing factor manipulation, Docampo failed to establish that the agents involved in the sting engaged in “extraordinary misconduct.” See Ciszkowski, 492 F.3d at 1271. Docampo argues that a sting operation against an 18-year-old who was not the intended target is government misconduct, but Docampo was an adult when the sting occurred and participated voluntarily. Docampo attempted to lead the criminal activity and told Agent Zayas what to expect during the robbery. That the sting operation involved a young adult who was not the original target does not amount to extraordinary misconduct by the government. See United States v. Bohannon, 476 F.3d 1246, 1252 (11th Cir. 2007) (the use of a fictional 15-year-old girl by the government “was no more manipulative than in any other sting operation” and did not constitute sentencing factor manipulation); Sanchez, 138 F.3d at 1414 (concluding the use of a large amount of drugs by the government in a sting did not result in sentencing factor manipulation).
2. Obstruction of Justice
Docampo argues that the district court erred when it enhanced his sentence based on obstruction of justice because the court considered unreliable hearsay. The presentence investigation report recommended an enhancement for obstruction of justice based on the threatening phone call Docampo made to Lorenzo’s girlfriend. In addition to the testimony of Lorenzo at trial about the threat, Agent Gistinger testified at the sentencing hearing that he spoke with Lorenzo and his girlfriend about the phone call. Docampo admitted in his sentencing memorandum and at the sentencing hearing that he contacted Lorenzo’s girlfriend twice by telephone and was upset about his best friend testifying against him, but Docampo denied making any threat. Based on this evidence, the district court enhanced Docampo’s sentence by two levels.
Evidentiary requirements are more relaxed during a sentencing procedure, and reliable hearsay is admissible. “In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.” United States Sentencing Guidelines § 6A1.3(a) (Nov.2008). The district court did not make explicit findings about the reliability of Agent Gistinger’s hearsay testimony, but that failure “does not necessarily require reversal or remand where the reliability of the statements is apparent from the record.” United States v. Gordon, 231 F.3d 750, 761 (11th Cir.2000).
The reliability of the hearsay evidence about Docampo’s threat is apparent from the record. Agent Gistinger’s testimony about his conversation with Lorenzo’s girlfriend is corroborated by Lorenzo’s testimony during the trial, and this evidence is bolstered by Docampo’s admissions that he made two phone calls to Lorenzo’s girlfriend, was upset about Lorenzo testifying, and apologized in the second call for what was said during the initial conversation. Because the corroborating statements by Lorenzo and Docampo’s admission that he made the phone *1099 calls to Lorenzo’s girlfriend are sufficient to establish the reliability of Agent Gistinger’s testimony, see Gordon, 231 F.3d at 760-61, “the district court’s failure to make separate findings regarding the reliability of [this testimony] was not error.” Id. at 761. The district court did not err when it enhanced Docampo’s sentence based on his threatening phone call.
3. Minor Role Adjustment
Docampo argues that the district court clearly erred when it denied him a minor role reduction, but we disagree. A district court may reduce a defendant’s offense level by four levels if the defendant was a “minimal participant” and by two levels if the defendant was “a minor participant” in the crime. U.S.S.G. § 3B1.2. A minimal participant is “plainly among the least culpable of those involved in the conduct of a group.” Id. cmt. n.4. “[T]he defendant’s lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.” Id. According to the Sentencing Guidelines, “[i]t is intended that the downward adjustment for a minimal participant will be used infrequently.” Id.
To determine whether Docampo was entitled to a reduction for a minor role, the district court had to consider (1) “[his] role in the relevant conduct for which []he has been held accountable at sentencing” and (2) his “role as compared to that of other participants in [his] relevant conduct.” De Varon, 175 F.3d at 940. “The fact that a defendant’s role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants.” Id. at 944. To receive the role reduction, Docampo had to prove that he was “less culpable than most other participants[.]” Id.
Docampo argues that the district court erroneously considered evidence of his possession of a firearm as relevant conduct when it evaluated his role in the offense, but this argument is based on a misreading of the Sentencing Guidelines. Docampo asserts that consideration of evidence of his firearm possession as conduct relevant to the drug conviction amounts to double counting of the firearm use, which is prohibited by the Sentencing Guidelines. Docampo relies on the following commentary in the Guidelines Manual, which is limited to the application of an enhancement:
Weapon Enhancement — If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under 1.3 (Relevant Conduct).
U.S.S.G. § 2K2.4 cmt. n.4. This commentary says nothing about whether the district court, in denying Docampo a reduction for a minor role, was entitled to consider that Docampo obtained a firearm for the robbery.
Docampo’s argument fails. Although the district court was prohibited from using the firearm to increase the base offense levels for the conspiracy charges, the district court was entitled to consider the firearm when evaluating Docampo’s argument about a reduction for a minor role. The record establishes that Docampo was actively engaged in discussions about the logistics of the robbery, offered to take a *1100 more active role in the robbery, and repeatedly professed familiarity and experience with similar robberies. Docampo was held responsible only for the offenses for which he was convicted, and he was not less culpable than the other conspirators. The district court did not clearly err when it found that Docampo played more than a minor role in the offense.

C. Docampo’s Sentence Is Reasonable.

Docampo argues that his sentence of 270 months of imprisonment is unreasonable, but we disagree. A sentence may be procedurally or substantively unreasonable, United States v. Hunt, 459 F.3d 1180, 1182 n. 3 (11th Cir.2006), and we address both aspects of Docampo’s sentence.
1. Procedural Reasonableness
Docampo argues that his sentence was unreasonable because the district court did not “adequately and properly” consider the sentencing factors in section 3553(a) or his “arguments with respect to these factors.” Procedural unreasonableness includes “failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.” Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). Although the district court must provide some explanation for the sentence, “nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.” United States v. Scott, 426 F.3d 1324, 1329 (11th Cir.2005).
Docampo’s argument of procedural unreasonableness fails. Before imposing the sentence, the district court stated that it had heard and considered Docampo’s arguments. The court then stated, “After considering the advisory sentencing guidelines and all of the factors identified in Title 18 United States Code, Section 3553(a)(1) through (7), the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.”
Although the acknowledgment by the district court that it had considered Docampo’s arguments and the sentencing factors of section 3553 “alone is sufficient in post -Booker sentences,” Scott, 426 F.3d at 1330, the record reflects that the court also discussed the sentencing factors in detail before it imposed Docampo’s sentence. The district court, for example, expressed concern about the potentially violent nature of the robbery in which Docampo volunteered to participate. The court questioned Dr. Maher, an expert in forensic psychiatry, about Docampo’s knowledge of the charges against him, his responsibility level, and his association with others who engaged in illegal activity. The district court expressed concern about the “tremendous upsurge of activity of people such as yourself who are youngsters, so to speak, but have the capability to go out and put themselves into volatile, violent situations.” The court also discussed Docampo’s prior work and educational history. The district court required Docampo and the government to discuss, on the record, which defendants had entered pleas and “who maintained the position of saying I’m not responsible.” The court stated, “They [the other defendants] have a perfect right to go to trial— all those people had a perfect right to go to trial. They admitted their guilt.” The court acknowledged that several of the juvenile defendants had been charged in state court as adults. The district court did not commit a procedural error in sentencing Docampo.
*1101 2. Substantive Reasonableness
Because Docampo’s sentence is “procedurally sound,” we now “consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances ____” Gall, 128 S.Ct. at 597. We have acknowledged “that there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one.” Talley, 431 F.3d at 788.
Docampo argues that his sentence is substantively unreasonable when contrasted with the less severe sentences his other conspirators received. Reyes, a target of the sting, entered a plea agreement with the government before trial and pleaded guilty to conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of the drug conspiracy. In exchange for his testimony at Docampo’s trial and other assistance, the government agreed to dismiss the remaining charges against Reyes and not oppose Reyes’s request for a downward departure. The district court denied Reyes’s requests for a departure and sentenced him to 168 months of imprisonment for the conspiracy conviction and 60 months of imprisonment for the firearms conviction, to run consecutively for a total term of imprisonment of 228 months, five years of supervised release, and a special assessment of $200. Gutierrez entered a plea agreement and agreed to plead guilty to the firearms charge and cooperate with the government in exchange for the dismissal of the other charges and a recommendation for a downward departure at sentencing based on substantial assistance. The district court sentenced Gutierrez to 60 months of imprisonment, which was the mandatory minimum term for the firearms count, five years of supervised release, and a special assessment of $100. Luengas and Powell, who were juveniles at the time of the sting, were prosecuted in state court as adults and released on probation.
Although the district court is required “to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” 18 U.S.C. § 3553(a)(6), the other defendants who received less severe sentences were not similarly situated. We have held that defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial. Williams, 526 F.3d at 1323-24. There is no unwarranted disparity even when the sentence the cooperating defendant receives is “substantially shorter.” Id. at 1323. “On a practical level, it would seem patently unreasonable to endorse a regime in which a defendant could steadfastly withhold cooperation from the authorities and then cry foul when a coconspirator benefits from rendering substantial assistance to the government.” United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir.2005). “Because [Docampo] did not provide any assistance to the government, there was no ‘unwarranted’ disparity between his and [Reyes’s and Gutierrez’s] sentences.” Williams, 526 F.3d at 1324.
Docampo also asserts that his sentence was unreasonable based on the disparity between his federal sentence of 270 months of imprisonment and Powell’s and Luengas’s sentences of probation in state court, but we again disagree. “A well-founded claim of disparity, however, assumes that apples are being compared to apples.” Mateo-Espejo, 426 F.3d at 514. Powell and Luengas were juveniles when the sting occurred, were prosecuted as *1102 adults in state court, and pleaded guilty, but Docampo, who was 18 years old when he was arrested, was prosecuted in federal court and sentenced under federal law. Section 3553(a)(6) is concerned with unwarranted disparities in sentences among federal defendants. See United States v. Willis, 139 F.3d 811, 812 (11th Cir.1998) (per curiam); United States v. Clark, 434 F.3d 684, 687 (4th Cir.2006) (“The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants.”) (emphasis omitted). One of the purposes of the Sentencing Commission, and by extension the Sentencing Guidelines, is to “establish sentencing policies and practices for the Federal criminal justice system that ... provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct----” 28 U.S.C. § 991(b)(1)(B) (emphasis added); see also Clark, 434 F.3d at 687 (“The Guidelines sought to avoid only the unwarranted disparities that existed in the federal criminal justice system, that system for which the Guidelines are governing law.”).
To require parity in sentencing between state and federal defendants “would seriously undermine the goal of nationwide uniformity in the sentencing of similar defendants for similar federal offenses.” See Willis, 139 F.3d at 812. Before the Supreme Court decided Booker, we held, in Willis, that a district court could not grant a downward departure from the guidelines “[biased on the disparity in sentences imposed on brothers of roughly equal culpability for the same offense conduct” when one of the brothers was prosecuted in state court, pleaded guilty based on an agreement with the government, and received a sentence of time served and probation. Id. “[T]he district court may not depart downward in order to reconcile disparity between federal and state sentences among codefendants because such departures create systemwide disparities among federal sentences.” Id. We concluded, “The guidelines do not comment on disparate federal and state- sentences imposed upon codefendants .... ” Id.
After Booker, the Seventh Circuit rejected a similar argument to vary from the guidelines range and shorten the sentence of a federal defendant based on the sentence received by another conspirator in state court because that variance would have created disparities within the federal system:
Reducing a federal prisoner’s sentence to accord with that of a similarly situated state convict may decrease one sentencing disparity but simultaneously enlarges another: that between the federal convict and all similarly situated federal convicts. Because penalties vary from state to state, sentence reductions to approach state penalties similarly vary with the state in which the federal sentencing court sits, unjustifiably creating disparities among federal convicts.
United States v. Wurzinger, 467 F.3d 649, 654 (7th Cir.2006) (citation omitted).
Section 3553(a)(6) addresses unwarranted sentence disparities among federal defendants who are similarly situated instead of disparate federal and state sentences. Docampo was not entitled to a less severe sentence based on the sentences received by Powell and Luengas in state court. Docampo, a federal defendant who was found guilty following a jury trial, is not similarly situated, under section 3553(a)(6), to Powell and Luengas, who were prosecuted in state court and pleaded guilty. See id.; Clark, 434 F.3d at 687; see also Williams, 526 F.3d at 1323-24.
The dissent faults us for “focus[ing] on only one § 3553(a) factor in reaching [the] conclusion that the sentence [i]s substantively reasonable,” but Docampo does not *1103 argue that his sentence is substantively unreasonable based on the other factors. “[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in section 3553(a).” Talley, 431 F.3d at 788. Docampo argues that his sentence is unreasonable based on sentencing disparity, but he does not argue, much less establish, that his sentence is unreasonable based on any other factor. We decline to assume the role of counsel and make a new argument for Docampo. Because Docampo has not established that his sentence “fails to achieve the purposes of sentencing as stated in section 3553(a),” id., we conclude that his sentence is reasonable.
IV. CONCLUSION
Docampo’s convictions and sentences are AFFIRMED.