[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10161
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00409-TCB-RGV-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TREMAIN HUTCHINSON,
a.k.a. Mario,
a.k.a. TJ,
a.k.a. Quan,
a.k.a. Tjak,
a.k.a. Mario S,
a.k.a. TJ S,
a.k.a. Quan S,
a.k.a. Tjak S,
a.k.a. Harry S,
a.k.a. Ced S,
a.k.a. Larry S,
a.k.a. Money M,
a.k.a. Mario H,
a.k.a. Q D,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 8, 2014)

Before JORDAN, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Tremain Hutchinson appeals his total sentence of life imprisonment for several convictions involving the enticement and sexual exploitation of minors. Hutchinson challenges the procedural and substantive reasonableness of his life sentence. Upon review of the record, and after consideration of the parties' briefs, we affirm.

**I.**

Hutchinson came to the attention of law enforcement in February 2012, after a mother contacted the police upon finding photographs of her fifteen-year-old daughter performing oral sex on her thirteen-year-old son. According to the daughter, a man threatened to hurt her and her family if she did not send him photographs of herself engaging in the sexual activity with her brother. Police later identified Hutchinson, who was twenty-seven years old at the time, as the man who had coerced the girl. Upon further investigation, police discovered a pattern of sexual abuse linked to Hutchinson involving about fifteen minor victims.

2

According to the presentence investigation report ("PSR"), the factual basis presented by the government at the change-of-plea hearing, and testimony at sentencing, Hutchinson used a social-media website dedicated to minors to extort sexually explicit photographs and videos from minors.  Nearly all of the victims, who were between the ages of eleven and sixteen, had profiles on the website. Hutchinson created fake profiles on the website presenting himself as a teenager between fifteen and eighteen years old.  He then contacted the victims under the guise of these fake profiles, offering to buy them things.  Once a victim responded to Hutchinson's messages, he persuaded them to give him phone numbers, addresses, and nude photographs.

Having received a victim's nude photograph, Hutchinson extorted more explicit photographs and videos by threatening to post the victim's photographs on the Internet, send the photographs to the children's parents, or physically harm the children or their families.  On some occasions, Hutchinson actually posted the explicit photographs and videos on the Internet when a victim did not act as he wished.  At times, he used the photographs he had posted online to give added force to his threats against other victims.  Backed by the threat of exposure and harm to the victims or their families, Hutchinson ordered the victims to engage in sexual conduct, including inserting objects into their genitals and engaging in oral and vaginal intercourse.  At least three times, Hutchinson coerced older sisters to

3

engage in oral intercourse with their younger brothers while streaming video of the activity to Hutchinson over the Internet.

Hutchinson's criminal conduct was not limited to coercing minors to engage in sexual activity through the Internet. Hutchinson raped four of the victims in this case. One girl was eleven, two were thirteen, and one was sixteen. Hutchinson also sent at least one photograph of his penis to a victim he knew to be fourteen years old.

## II.

Hutchinson was indicted by a federal grand jury for twenty-four counts of federal child-sex crimes. Ultimately, Hutchinson pled guilty to two counts of sexual exploitation of children (Counts 1 and 18), in violation of 18 U.S.C. § 2251(a) and (e); two counts of enticement of minors to engage in criminal sexual activity (Counts 2 and 8), in violation of 18 U.S.C. § 2422(b); and one count of transferring obscene materials to minors (Count 17), in violation of 18 U.S.C. § 1470.

Although he pled guilty to only five counts, Hutchinson's relevant conduct pertaining to the other crimes charged in the indictment was used for sentencing purposes because it occurred during the commission of the offenses of conviction. The PSR determined that Hutchinson's total offense level was 50—seven levels above the highest offense level on the sentencing table. *See* U.S. Sentencing

Guidelines Manual Sentencing Table, Ch. 5, Pt. A.   The total offense level included a two-level reduction that Hutchinson received for acceptance of responsibility, pursuant to U.S. Sentencing Guidelines Manual § 3E1.1(a).  With a criminal history category of I, Hutchinson's advisory-guideline range was life imprisonment.   Hutchinson was subject to a mandatory-minimum sentence of fifteen years' imprisonment and a statutory-maximum sentence of life imprisonment.   Among other objections to the PSR, Hutchinson objected to the government's refusal to recommend the additional one-level decrease for acceptance of responsibility under § 3E1.1(b).

At the sentencing hearing, the government argued that it was not recommending the additional reduction for acceptance of responsibility because, by pleading guilty to only five of the twenty-four counts, none of which involved his conduct of coercing minors into incestuous rape, Hutchinson had not accepted full responsibility.  In addition, according to the government, his late plea caused the government to prepare for trial, such as interviewing victims and victims' families.

Hutchinson responded that the government should grant the additional level because he pled guilty and faced a life sentence, saved the government the burden of trial preparation, and his late plea was the result of months of negotiation.  The

court overruled this objection, explaining that the rules required the government to make a formal motion for the reduction and that the government had not done so.

When calculating the guideline range, the district court noted that Hutchinson's lack of criminal history was surprising.  Both parties agreed that the court's calculation of a total offense level of 50 and a criminal history category of I was correct, resulting in an advisory-guideline range of life imprisonment.  The court then asked the parties to recommend an appropriate sentence.

The government requested a sentence of life imprisonment, arguing that the court should not give Hutchinson a sentence below the guideline range because of the cruelty with which he treated the victims and the traumatic effects his conduct has had and will continue to have on their lives.  In support, the government presented some of the text messages between Hutchinson and the victims to illustrate how malicious Hutchinson had been in communicating with the victims. The messages are rife with demands for nude pictures of particular private body parts, references to the children as "bitch," and threats of exposure or physical harm.  One message from Hutchinson to a victim states, "i [sic] just post[ed] on sex website to[o.] lol dumb white bitch."[1]

The government also introduced victim-impact statements and testimony from some of the victims' parents, which tended to show the destructive impact

---

[1] "lol" is slang for "laugh out loud" or "laughing out loud."

that Hutchinson's conduct had on the victims as well as their families. One of the victims who was coerced into incest stated that she was in counseling, that she no longer gets along with her brother because of what happened, which she felt was her fault, and that she has trouble trusting anyone. Many of the parents reported that their children were in counseling, had suicidal thoughts or had attempted suicide, and were having other behavioral issues. Some of the parents also explained that relationships among members of their family had been altered, frayed, or destroyed. The government argued that a guideline sentence of life imprisonment would, pursuant to 18 U.S.C. § 3553(a), reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from further crimes of Hutchinson.

Hutchinson asked the court to consider a sentence between the fifteen-year mandatory minimum and life, arguing that a sentence below life imprisonment would show that the offense was serious, promote respect for the law, and provide just punishment. Hutchinson asserted that the court had discretion to make a "downward departure" to account for his acceptance of responsibility, based on the same points raised earlier with respect to § 3E1.1(b). The court heard testimony from Hutchinson's family members, the mother of his son, and Hutchinson himself. Hutchinson personally apologized for the crimes, and he claimed that he

had thought it was just a joke, which then got carried too far, and that he did not

know that he was hurting anyone at the time.

The court noted that it was moved by the testimony of the victims' parents.

After counseling the victims present to forgive Hutchinson as part of the healing

process, the district court stated the following before imposing sentence:

> Now we turn to the defendant.  The fact that I've admonished the victims to forgive the defendant is very different from the role that society takes and plays in looking at this defendant.  It is one thing for the individual victims to choose to exercise mercy in their hearts and to forgive the defendant, but that is not the function of society. . . .
>
> I don't represent the defendant[;] I don't represent the government. I am here to vindicate the public interest in our constitutional system of government.   These crimes shock the conscience.  We have a serial sexual predator, a serial rapist, forcing incest upon other people.   These crimes were heinous, they are atrocious, they are unfathomable, they are abominable.  This was a six-month reign of terror for the defendant's own perverted sexual gratification.  He has profoundly damaged innocent victims.  He has been a nightmare.  And he has seemed [at] the times he committed these crimes to enjoy inflicting pain and searing scars on others with no mercy, and the defendant today is not going to get mercy because mercy would not be justice.  I am not a hard-hearted man, but if there ever were a guidelines case, this is it.

After "carefully weighing" the § 3553(a) factors, the district court sentenced

Hutchinson to life in prison.  This appeal followed.

### III.

We review the reasonableness of a sentence for an abuse of discretion.

*United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013).  We first ensure that

8

the district court committed no significant procedural error, such as improperly calculating the guideline range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586 (2007).

If a sentence is procedurally reasonable, we then examine whether the sentence was substantively reasonable. *Gall*, 552 U.S. at 51, 128 S. Ct. 586. Ultimately, the district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing listed under § 3553(a)(2), including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2). In addition, the court must consider the nature and characteristics of the offense and the history and characteristics of the defendant, among other factors. *Id.* § 3553(a)(1). The weight to be given any particular § 3553(a) factor is a matter left to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). Therefore, we will vacate a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal

9

quotation marks omitted).  The party challenging the sentence bears the burden of showing that the sentence is unreasonable in light of the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Hutchinson argues that his sentence is procedurally unreasonable because the district court failed to take into account that he did not have a criminal history, that he was young, and that his criminal behavior was limited to a six-month period.  Our review of the record, however, does not support these contentions.  The court specifically commented that it was surprised by Hutchinson's lack of criminal history and referred to the criminal conduct as a "six-month reign of terror."  Also, the court heard mitigating testimony from Hutchinson's family members and the mother of his son, all of whom asked for mercy from the court for reasons including Hutchinson's age.  The court further heard argument from Hutchinson's counsel regarding the period of the offensive conduct.  Although the court did not expressly talk about how these factors affected the ultimate sentence, it was sufficient for the court to acknowledge that it had considered Hutchinson's arguments and weighed the § 3553(a) sentencing factors.  *United States v. Docampo*, 573 F.3d 1091, 1100 (11th Cir. 2009).

In addition, the court adequately explained its reasoning for the sentence imposed, including the need of the sentence to reflect the seriousness of Hutchinson's offenses, to provide just punishment, and to protect society from

further crimes of Hutchinson.   The court found the crimes to be "heinous," "atrocious," "unfathomable," and "abominable"—all descriptions that find full support in the record.   The court further explained that Hutchinson was "a serial sexual predator, a serial rapist, forcing incest upon other people," who had "profoundly damaged innocent victims" for his "own perverted sexual gratification."   The court also noted that Hutchinson seemed to "enjoy inflicting pain and searing scars on others with no mercy."   Finally, the court stated that "the defendant today is not going to get mercy because mercy would not be justice." While the court primarily focused on the seriousness of the crimes and the need to provide just punishment, the weight to be accorded the § 3553(a) factors is committed to the district court's discretion.   *See Clay*, 483 F.3d at 743.   The fact that the court emphasized a particular factor does not mean that the sentence was unreasonable.   *United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008). Consequently, the court did not procedurally err in sentencing Hutchinson because it considered the § 3553(a) factors and adequately explained its sentence.

Nor is the sentence substantively unreasonable.   Hutchinson argues that his sentence was substantively unreasonable because a lesser term of years would have been reasonable, and the court failed to adjust his sentence downward for his acceptance of responsibility.   We have stated before that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses," and

11

we "have upheld lengthy sentences in these cases as substantively reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (affirming as reasonable a 100-year sentence for a first-time offender who sexually abused a single thirteen-year-old girl and took photos of it); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming as reasonable a 140-year sentence for an offender with few prior offenses who produced, possessed, and distributed child pornography); *see also Irey*, 612 F.3d at 1206-08 (describing the "devastating and long-lasting effects" that childhood sexual abuse has on its victims).

Given the egregious and despicable nature of Hutchinson's crimes, recounted above, as well as the traumatic effects that his conduct had on his victims, Hutchinson has not met his burden of showing that the guideline-range sentence of life imprisonment was unreasonable. *See Irey*, 612 F.3d at 1206 ("[T]he more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be."); *Tome*, 611 F.3d at 1378; *see also United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (stating that "[w]e ordinarily expect a sentence a sentence within the guideline range to be reasonable"). A life sentence in these circumstances reflects the seriousness of the crimes and the concomitant need for just punishment, as well as the need to protect the public from further crimes of Hutchinson and afford adequate deterrence of similar criminal conduct. *See* 18 U.S.C. § 3553(a)(2). Although the district court

12

could have chosen to reduce Hutchinson's sentence based on his purported acceptance of responsibility, the court did not abuse its discretion in not doing so, nor do we agree that Hutchinson did, in fact, accept responsibility for the full scope of his reprehensible conduct.  For these reasons, Hutchinson's guideline-range life sentence was within the range of reasonable sentences based on the totality of the circumstances and the relevant § 3553(a) sentencing factors.

## IV.

In sum, the district court did not procedurally err in sentencing Hutchinson, and we cannot say that Hutchinson's guideline-range life sentence was substantively unreasonable.  Consequently, we affirm.

**AFFIRMED.**