[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13896
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00097-EAK-TBM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALBERTO CUERO CORTES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 12, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Walberto Cuero Cortes pled guilty to conspiring to possess and possessing with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a), 70506(a)-(b), and 21 U.S.C. § 960(b)(1)(B)(ii).  The district court imposed a 135-month sentence, at the low-end of the advisory guidelines range of 135 to 168 months' imprisonment.  On appeal, Cortes argues that his sentence was substantively unreasonable because the district court failed to vary downward in order to avoid imposing disparate sentences between himself and one of his codefendants, Edwin Darwin Quintero Bravo ("Quintero Bravo"), who received a 120-month sentence. After review, we affirm Cortes's 135-month sentence.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

On February 23, 2017, the U.S. Coast Guard intercepted a vessel in international waters off the coast of the Galapagos Islands.  After boarding the boat, Coast Guard officers recovered 46 bales of cocaine, totaling 1,100 kilograms in weight.  The Coast Guard officers interviewed and detained the crewmembers, which included defendant Cortes, and (1) Quintero Bravo; (2) Luis Alfredo Parrales Bravo ("Parrales Bravo"); and (3) Francisco Rodriguez Barajas ("Barajas").

2

## B.    Indictment and Pleas

All of the crewmembers were charged together under the MDLEA with one count of conspiring to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States and one count of possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. The four codefendants were indicted on March 7, 2017.

In May 2017, all four codefendants entered guilty pleas. Three of the codefendants—Quintero Bravo, Barrajas, and defendant Cortes—pled guilty, pursuant to written plea agreements, to the cocaine conspiracy count and, in exchange, the government agreed to dismiss the cocaine possession count. In their plea agreements, the three codefendants also agreed to cooperate with the government, and the government agreed to consider each codefendant's cooperation and, if warranted, to file a motion recommending a sentence reduction based on the codefendant's substantial assistance. Codefendant Parrales Bravo, on the other hand, pled guilty to both counts of the indictment and did so without the benefit of a written plea agreement.

At their plea hearing, all four codefendants admitted that they had entered into a plan to smuggle more than five kilograms of cocaine by sea and that the U.S. Coast Guard had intercepted them in international waters on a vessel with

3

multiples bales of cocaine, totaling in excess of five kilograms.  The four codefendants also all agreed that no crew member identified himself as the master of the vessel, but that one crew member had said that the vessel had departed from Ecuador.

## C.    Sentencing of Defendant Cortes

At defendant Cortes's sentencing, the district court, without objection, (1) calculated defendant Cortes's base offense level of 38, pursuant to US.S.G. § 2D1.1(c)(1), because his offense involved 1,100 kilograms of cocaine; (2) decreased the offense level by 2 levels, pursuant to § 2D1.1(b)(17), because he met the safety-valve criteria in § 5C1.2; and (3) decreased the offense level by another 3 levels, pursuant to § 3E1.1(a) and (b), for acceptance of responsibility, which resulted in a total offense level of 33.  With a total offense level of 33 and a criminal history category of I, the district court determined that the advisory guidelines range was 135 to 168 months' imprisonment.

Defendant Cortes argued that he was "similarly situated" to codefendant Quintero Bravo and asked for a downward variance to 120 months to avoid a disparity with Quintero Bravo's 120-month sentence.  Defendant Cortes maintained that he signed the plea agreement "thinking that [he was] going to get a 5K."

The government responded that a 135-month sentence was appropriate in defendant Cortes's case, especially given the large amount of cocaine found on the vessel, and that any assistance defendant Cortes gave law enforcement was taken into account in the three-level decrease in his offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. The district court agreed that 1,100 kilograms was "a lot of kilograms."

Defendant Cortes then argued that he should receive a 120-month sentence because he was less culpable than Quintero Bravo, who had the GPS on the vessel. Defense counsel also pointed out that defendant Cortes was deprived of a § 5K1.1 reduction merely because he was not the first to offer to cooperate, stating that codefendant Barajas's counsel "beat [him] by how many minutes. It's just not fair, but that's the policy." The government responded that the U.S. Attorney's Office in Tampa reserves § 5K1.1 motions, which, under 18 U.S.C. § 3553(e), can result in sentences below the mandatory minimum, for the first defendant who offers to cooperate and that other defendants who assist the government are appropriately "compensated by [the safety-valve reduction in] the guidelines."

The district court denied defendant Cortes's request for a variance and sentenced him to 135 months. The district court noted that the downward variance in codefendant Quintero Bravo's case for his cooperation "was justified," that the

quantity of cocaine involved was not to be minimized, and that the difference between the two defendants' sentences was 15 months.

## II. GENERAL PRINCIPLES

We review the reasonableness of a sentence under the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We first ensure that the district court made no significant procedural error, then examine whether the sentence was substantively reasonable in light of the totality of the circumstances. Id. at 51, 128 S. Ct. at 597; see also United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[1] The party challenging the sentence bears the burden to show that the sentence was unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).[2] We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of

---

[1]Cortes does not argue that his sentence is procedurally unreasonable.

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

In imposing a particular sentence, one of the factors the district court considers is the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). The purpose of this factor is to avoid such disparities "among defendants with similar records who have been found guilty of similar criminal conduct." United States v. Docampo, 573 F.3d 1091, 1102 (11th Cir. 2009) (quotation marks omitted). Therefore, "[a] well-founded claim of disparity . . . assumes that apples are being compared to apples." Id. at 1101 (quotations omitted); see also United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (explaining that sentencing disparities are not "unwarranted" if the comparators are not similarly situated). In United States v. Williams, 526 F.3d 1312, 1324 (11th Cir. 2008), we concluded that codefendants who received disparate sentences were not similarly situated where one of the defendants received a shorter sentence because he had cooperated with the government.

### III.  CORTES'S SENTENCE

The district court did not abuse its discretion in imposing the 135-month sentence. Cortes's 135-month sentence was well-below the applicable statutory maximum sentence of life under 21 U.S.C. § 960(b)(1)(B)(ii), and was at the low end of the advisory guidelines range, both of which suggest the sentence was

7

reasonable.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008); United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Moreover, we reject Cortes's claim that the disparity between his sentence and the sentence of his codefendant, Quintero Bravo, rendered Cortes's sentence substantively unreasonable.  First, disparities between sentences are only one of the factors a district court must consider in arriving at the appropriate sentence, and here the district court explained that it did not want to minimize the 1,100 kilograms of cocaine involved, which relates to the seriousness of the offense, another factor the district court must consider.  See 18 U.S.C. § 3553(a)(2)(A). The district court was within its discretion to give more weight to another factor— such as making sure the sentence reflected the seriousness of the drug smuggling venture—in making its sentencing decision.  See United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007).  This is particularly true where, as here, the disparity between the sentences is small because, as this Court has explained, there is "a range of reasonable sentences dictated by the facts of the case" from which the district court can choose.  See Irey, 612 F.3d at 1190 (quoting Pugh, 515 F.3d at 1191).

Second, the district court determined that the 15-month difference between Cortes's 135-month sentence and Quintero Bravos's 120-month sentence was justified.  The district court explained that Quintero Bravo received a downward

variance because he provided information to the government that, but for the "extraordinary circumstance" of his attorney's five-day delay in making his proffer, would have entitled him to a § 5K1.1 downward departure.  After his indictment, Cortes also offered to provide information to the government.  However, apart from accepting responsibility and admitting as part of his guilty plea his own conduct in the cocaine smuggling scheme (for which he received a 3-level reduction in his offense level), there is no actual evidence in the record that Cortes himself provided information to the government that the government did not already have.  Stated another way, the district court found that Cortes was not similarly situated with codefendant Quintero Bravo.  See Docampo, 573 F.3d at 1102.  Thus the 15-month disparity between the two codefendants' sentences was not "unwarranted" within the meaning of § 3553(a)(6).  See Williams, 526 F.3d at 1312.

For these reasons, Cortes has not met his burden to show his 135-month sentence is substantively unreasonable.

**AFFIRMED.**