[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14378
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00318-JDW-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD LILLISTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 17, 2018)

Before TJOFLAT, WILLIAM PRYOR and HULL, Circuit Judges.

PER CURIAM:

Richard Lilliston appeals his sentence of 60 months of imprisonment for conspiring to defraud the United States. 18 U.S.C. § 371. While he served as the chief executive officer of the Hillsborough Achievement Resources Centers, Lilliston and several other employees misappropriated social security insurance and disability benefits paid to developmentally disabled residents in group homes. Lilliston challenges, under the Sentencing Guidelines, the calculation of his loss amount and the enhancement of his sentence for committing a crime involving ten or more victims and for selecting victims who were vulnerable. Lilliston also challenges the substantive reasonableness of his sentence. We affirm.

Lilliston and other officers of the Centers served as representative payees for more than 60 residents who suffered from disorders like Down Syndrome and Alzheimers Disease and who were unable to manage their government benefits. After the Social Security Administration deposited benefits in the residents' bank accounts, Lilliston and Frank Pannullo, the chief financial officer of the Centers, transferred the monies to a so-called "Endowment Account" that they had created. Lilliston concealed the fraud from families by telling them that the transfers enabled the residents to maintain a personal account balance of $2,000 or less, as required to remain eligible for governmental benefits, and to conserve benefits for their future needs. Lilliston also concealed the fraud from the Administration by having his employees submit reports that falsely stated the benefits were spent on

2

the residents. In the meantime, Lilliston and Pannullo transferred funds from the Endowment Account to a general operating account that was used to pay their salaries, raises, transportation allowances, and other expenses.

After another officer demanded that the Centers audit the Endowment Account, Lilliston instructed Pannullo and the company comptroller to have the disabled residents sign a backdated trust agreement that purportedly approved transferring their government benefits to the Endowment Account. The Board that governed the Centers discovered the scheme to defraud, and an investigation revealed that the conspirators had diverted $657,635.19 from residents' bank accounts to the general operating account.

The district court did not err by attributing to Lilliston the full amount of the loss. Lilliston argues that the "loss calculation of $657,635.19, while perhaps technically correct, overstate[s] the effective amount of loss" from the fraud. But Lilliston's participation in a joint criminal activity made him responsible for all losses caused by his coconspirators that were "within the scope of the jointly undertaken criminal activity," "in furtherance of that criminal activity," and "reasonably foreseeable in connection with that criminal activity." United States Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (Nov. 2016). Lilliston conspired with Pannullo and others to divert governmental benefits from their intended recipients, and he orchestrated the plan to conceal the fraud from the beneficiaries'

3

families and the Administration. The conspirators' actions were, at least, reasonably foreseeable to Lilliston in effectuating the scheme to defraud. Because that scheme caused a loss between $550,000 and $1.5 million, the district court did not err when it increased Lilliston's base offense level by 14 levels. *Id.* § 2B1.1(b)(1)(H), (I).

The district court also did not err by enhancing Lilliston's sentence for having 10 or more victims and for selecting victims who were vulnerable. A victim is "any person who sustained any part of the actual loss," *id.* § 2B.1 cmt. n.1, which is "the reasonably foreseeable pecuniary harm that resulted from the offense," *id.* § 2B1.1 cmt. n.3(A)(i). Lilliston argues that his sole victim is the Administration whose money was diverted, but the district court did not clearly err in finding that the residents were victims because they "sustained at least a part of the actual loss" by being deprived of benefits to which they were entitled either by having paid payroll taxes or by qualifying for governmental assistance on the basis of their age or a disability. The district court also did not clearly err in classifying the residents as vulnerable victims. Victims are considered vulnerable when, "due to [their] age, physical or mental condition, or other[] [characteristics, they are] particularly susceptible to the criminal conduct." *Id.* § 3A1.1 cmt n.2. Lilliston's victims had developmental disabilities and resided in group homes that provided assisted living services. Lilliston knowingly exploited the residents' vulnerabilities

4

by having them sign trust agreements that they lacked the capacity to understand. The district court committed no error when it increased Lilliston's base offense level based on the number of his victims, *id.* § 2B1.1(b)(2)(A)(i), and for selecting victims who were vulnerable, *id.* § 3A1.1(b)(1).

The district court also did not abuse its discretion by sentencing Lilliston to 60 months of imprisonment. Lilliston derived income by diverting governmental benefits intended for developmentally disabled persons to company accounts used to pay his wages and expenses, concealed his fraud from the beneficiaries' families and the Administration, and testified falsely at trial about his role in the conspiracy. The district court reasonably determined that that the statutory purposes of sentencing would be best served by imposing the maximum statutory penalty for Lilliston's crime. *See* 18 U.S.C. § 3553. Lilliston argues that he was entitled to a downward variance to achieve parity in sentencing with Pannullo, but those coconspirators were not similarly situated. *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). There was no unwarranted disparity between Lilliston's sentence and the two-year sentence his coconspirator received because, as the district court explained, Pannullo "cooperated, earned a . . . motion [for his substantial assistance] from the government, [and his sentence] was not enhanced because of obstruction of justice." Lilliston's sentence is reasonable.

We **AFFIRM** Lilliston's sentence.

5