[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10669
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20842-DPG-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

COURNOT EMMANUEL, JR.

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 25, 2020)

Before WILSON, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Cournot Emmanuel, Jr., appeals his total

30-month prison sentence for conspiracy to commit access device fraud,

unauthorized use of access devices, and bank fraud.  On appeal, Emmanuel

challenges the procedural and substantive reasonableness of his total sentence.

After careful review, we affirm.

## I.  BACKGROUND

On appeal, both of defendant Emmanuel's sentencing arguments relate to the

disparity between his sentence and the sentences of his codefendants in the access-

device fraud conspiracy.  Therefore, we outline the offense conduct and resulting

sentences for each of them, focusing primarily on Emmanuel.

### A.    Offense Conduct

From December 2013 to September 2015, defendant Emmanuel and three

codefendants, Romario Mathieu, James St. Louis, and Jeoffrey Bernadel, engaged

in a fraud scheme, wherein they used other people's personal identifying

information to file over 500 fraudulent unemployment insurance claims through

the Florida Department of Economic Opportunity ("DEO") for their own financial

gain.[1]

While the record did not establish exactly who filed each individual

---

[1]The unemployment-insurance system, whereby eligible applicants can receive weekly unemployment benefits, "is designed to provide benefits to persons out of work due to no fault of their own."  In Florida, the DEO oversees the unemployment-insurance system on behalf of the U.S. Department of Labor, which funds all substantive and administrative costs for the DEO. The DEO authorizes the State of Florida Department of Financial Services to send weekly unemployment compensation funds to claimants, which it sends in the form of a debit card mailed to the claimant or a direct deposit into a prepaid debit card account or other designated bank account.

unemployment insurance claim, the record showed the following.[2]  To file the claims, defendant Emmanuel and his codefendants used Mathieu's home computer and nearly 100 pieces of personal identifying information that were obtained and maintained by Mathieu.  Fraudulent unemployment insurance claims filed from Mathieu's computer totaled $1,073,579 in benefits, and $266,909 in benefits were actually paid.  Mathieu directed a portion of those fraudulently obtained benefits to defendant Emmanuel's and codefendant St. Louis's bank accounts.  A total of $148,214 in benefits from 49 fraudulent claims was requested for payment into defendant Emmanuel's bank account, and $20,196 in benefits from 17 of those claims were actually paid.  A total of $25,372 in benefits was requested for payment into codefendant St. Louis's account, and $7,443 in benefits were actually paid.

The fraudulently obtained unemployment benefits were withdrawn from Emmanuel's bank account shortly after they were deposited.  Defendant Emmanuel himself made at least one ATM withdrawal in April 2014.  Emmanuel then recruited codefendant Bernadel to join the fraud scheme, directing him to withdraw the funds from ATMs and bring the cash back to Emmanuel.  From May to July 2014, Bernadel used defendant Emmanuel's debit card to make six cash

---

[2]The record of the offense conduct is based on a combination of the trial evidence and unobjected-to facts in the PSR.

withdrawals from Emmanuel's bank account totaling $2,574 in fraudulently obtained unemployment benefits.

In addition to this unemployment-benefits fraud scheme with his codefendants, Emmanuel obtained other fraudulent payments with the help of unidentified co-conspirators. From July to October 2014, co-conspirators deposited counterfeit checks—one in the amount of $1,950, and one in the amount of $4,668.50—into Emmanuel's bank account and they withdrew funds in cash. In this same time period, Emmanuel also set up a fraudulent PayPal business account and used a stolen credit card number to make unauthorized charges totaling $10,000 to be paid into the PayPal account. Soon thereafter, Emmanuel made a check withdrawal request on the PayPal account in the amount of $9,730, but PayPal ultimately reversed the charges back onto the victim's stolen credit card.

## B. Convictions

In November 2017, a grand jury issued a ten-count indictment against defendant Emmanuel and codefendants Mathieu, St. Louis, and Bernadel for their conduct in the unemployment-benefits fraud scheme. All four defendants were charged with conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) ("fraud conspiracy count"). The indictment also charged: (1) defendant Emmanuel with one count of using unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2) ("access-device-use count"), and two counts of

4

aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) ("aggravated-identity-theft counts"); (2) codefendant Mathieu with two access-device-use counts, six aggravated-identity-theft counts, and one count of possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) ("access-device-possession count"); and (3) codefendant St. Louis with one access-device-use count and two aggravated-identity-theft counts.

Each of Emmanuel's three codefendants pled guilty.  Specifically, Mathieu and St. Louis each pled guilty to one fraud conspiracy count and one aggravated-identity-theft count.  The district court sentenced Mathieu to a total sentence of 36 months' imprisonment, which consisted of a 12-month sentence on the fraud conspiracy count, followed by a consecutive 24-month statutory mandatory minimum sentence on the aggravated-identity-theft count, under § 1028A(a)(1) and (b)(2).  The district court sentenced St. Louis to a total sentence of 24 months' imprisonment, which consisted of a term of time served on the fraud conspiracy count, followed by the same consecutive 24-month statutory mandatory minimum sentence on the aggravated-identity-theft count, under § 1028A(a)(1) and (b)(2). Bernadel pled guilty to one fraud conspiracy count, agreed to cooperate with the government and to testify against defendant Emmanuel at trial, and was sentenced to two years' probation.

In March 2018, defendant Emmanuel pled not guilty to all counts and was

5

released on bond awaiting trial.  Thereafter, in September 2018, the grand jury issued a superseding indictment recharging Emmanuel with his four prior counts relating to the unemployment-benefits fraud scheme and additionally charging him with bank fraud, in violation of 18 U.S.C. § 1344 ("bank fraud count"), relating to his fraud scheme with the unidentified co-conspirators to deposit counterfeit checks.  Emmanuel again pled not guilty.  In late October 2018, the district court revoked Emmanuel's bond after he tested positive for marijuana and ordered that he remain in jail pending trial.

In early November 2018, Emmanuel went to trial.  The jury found him guilty of the fraud conspiracy count, the access-device-use count, and the bank fraud count and acquitted him of the aggravated-identity-theft counts.

## C.    Presentence Report ("PSR")

The PSR assigned Emmanuel a total offense level of 23, consisting of: (1) a base offense level of 7; (2) a 14-level increase based on his intended loss of $1,073,579 (the total amount of requested unemployment insurance claims); and (3) a two-level increase because the offense involved ten or more victims.  His total offense level of 23 and criminal history category of I yielded an advisory guidelines range of 46 to 57 months' imprisonment.  Emmanuel filed no objections to the PSR.

Emmanuel did file a motion for a downward variance to a sentence of time

6

served based on the 18 U.S.C. § 3553(a) factors. Specifically, Emmanuel emphasized that, as of that point, he had been in prison three months after his bond was revoked. Emmanuel contended that this already "served" three-month period of imprisonment was all that was warranted because, among other reasons: (1) he admitted to his crimes of conviction and was acquitted of the aggravated-identity-theft counts; (2) his codefendants "recruited" him and "convinced" him to participate in the fraud conspiracy scheme by letting them use his bank accounts to receive the fraudulently obtained benefits and his share of the benefits was minimal at best; (3) he had no prior convictions; (4) he had a dysfunctional childhood; (5) despite his upbringing, he graduated high school, pursued a college degree, and honorably served in the Navy; and (6) he suffered from mental illness and drug and alcohol abuse.

In addition, defendant Emmanuel stressed the need to avoid unwarranted sentence disparities, pursuant to § 3553(a)(6). Emmanuel compared his codefendants' sentences on their fraud conspiracy convictions to the three months he had already been in prison. Emmanuel pointed out that St. Louis and Bernadel received probationary sentences for their fraud conspiracy convictions and Mathieu (the most culpable codefendant) received a 12-month prison sentence for his fraud conspiracy conviction. Thus, Emmanuel argued an appropriate and just sentence for him was time served. Emmanuel did not address his access-device-use or bank

fraud convictions.

## D.    Sentencing Hearing in February 2019

At Emmanuel's sentencing, the government and defense counsel agreed to a lower loss amount of $154,832.50 for Emmanuel, which included the $148,214 in intended loss from the unemployment-benefits fraud scheme and the $6,618.50 in checks in the bank fraud scheme.[3]  This lowered loss amount reduced Emmanuel's total offense level from 23 to 19.  His criminal history category of I and offense level of 19 yielded a new advisory guidelines range of 30 to 37 months' imprisonment.  The district court adopted the revised guidelines calculations and advisory guidelines range.

The government recommended a 36-month sentence, arguing that this was consistent with the total 36-month sentence imposed on Mathieu.  The government highlighted that: (1) Emmanuel went to trial and did not accept responsibility; (2) Emmanuel recruited Bernadel into the fraud scheme; (3) Emmanuel's loss amount was based on his actual use of personally identifying information, whereas Mathieu's loss amount, while larger, was based on mere possession of personally identifying information; (4) Emmanuel had committed multiple types of fraud, including bank fraud, while his codefendants had not; and (5) the government

---

[3]The $6,618.50 in checks in the bank fraud scheme is derived from Emmanuel's two counterfeit checks in the amounts of $1,950 and $4,668.50.

8

already had cut Emmanuel a significant break by agreeing to lower his loss amount.

In response, Emmanuel again requested a sentence of time served, reiterating his prior downward-variance arguments. Emmanuel stressed that, in comparing his sentence to his codefendants' sentences, the district court should not consider Mathieu's and St. Louis's sentences for the aggravated-identity-theft convictions because those convictions were subject to a consecutive 24-month statutory mandatory minimum sentence and defendant Emmanuel had been acquitted of that count. Defendant Emmanuel highlighted that, without that 24-month sentence, Mathieu and St. Louis received, respectively, 12-month and time-served sentences on their fraud conspiracy convictions. Emmanuel recognized his additional bank fraud conviction, but did not address his access-device-use conviction. He argued that his bank fraud conviction should not result in a greater sentence because: (1) his codefendants had already pled guilty by the time the grand jury charged him with that new count; and (2) it was unclear whether his codefendants also would have been charged with bank fraud had they proceeded to trial with him. Finally, Emmanuel allocuted.

Ultimately, the district court articulated that it had considered the parties' arguments, the PSR, the advisory guidelines range of 30 to 37 months, and the § 3553(a) factors. The district court sentenced Emmanuel to 30 months'

imprisonment on each of his three conviction counts, to run concurrently to each other.

Emmanuel objected that his total "sentence was disparate compared to . . . the codefendants in [his] case." The district court overruled the objection, finding that Emmanuel's and his codefendants' sentences were not disparate. The district court stated that it had considered Emmanuel's and his codefendants' "relative culpability." The district court found that, while "Mr. Mathieu had a higher loss amount and perhaps [] was one of the most culpable" defendants, Emmanuel had brought Bernadel into the fraud scheme, Emmanuel's loss amount was considerably higher than that of St. Louis, and Emmanuel went to trial. The district court also explained that it had considered the parties' arguments, balanced all the § 3553(a) factors, and sentenced Emmanuel at the low end of his advisory guidelines range.

This is Emmanuel's appeal.

## II. DISCUSSION

Defendant Emmanuel argues that his total 30-month sentence is both procedurally and substantively unreasonable. This Court reviews a sentence's reasonableness under a deferential abuse-of-discretion standard and employs a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). First, we determine whether the district court committed any significant procedural

error, such as failing to adequately explain its sentence or failing to consider the 18 U.S.C. § 3553(a) factors.[4]  Id.  Second, we assess whether Emmanuel's sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.  Id.  Emmanuel, as the party challenging his total sentence, carries the burden of showing that his sentence is unreasonable.  Id. at 1189.

## A.    Procedural Reasonableness

In reviewing for procedural reasonableness, we do not require the district court to incant specific language or articulate its consideration of each § 3553(a) factor, so long as the record as a whole demonstrates the district court's consideration of the § 3553(a) factors.  United States v. Bonilla, 463 F.3d 1176, 1181-82 (11th Cir. 2006).  When the district court pronounces its chosen sentence, it is required only to set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority.  United States v. Carpenter, 803 F.3d 1224, 1232 (11th Cir. 2015).

Here, Emmanuel has not shown that the district court committed any procedural error in imposing his sentence.  Both before and after pronouncing Emmanuel's sentence, the district court explicitly stated that it had considered the

---

[4]The § 3553(a) factors include, of relevance: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's future crimes; (5) the advisory guidelines range; and, importantly, (6) the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a)(1)-(2), (4), (6).

11

parties' arguments, the PSR, the advisory guidelines range of 30 to 37 months, and the § 3553(a) factors. Emmanuel does not contend that the district court's explanation of its sentence was inadequate and the record shows that the district court considered the relevant § 3553(a) factors. See Bonilla, 463 F.3d at 1181-82.

Rather, Emmanuel argues that his sentence is procedurally unreasonable because the district court failed to properly consider the need to avoid unwarranted sentencing disparities under § 3553(a)(6). Emmanuel's disparity argument is based on his contention that the district court was required to apply 18 U.S.C. § 1028A(b)(3), which provides that "in determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." 18 U.S.C. § 1028A(b)(3). Citing to § 1028A(b)(3), Emmanuel asserts that the district court compared his 30-month sentence to Mathieu's total 36-month sentence and St. Louis's total 24-month sentence, without taking into account that 24 months of their sentences resulted solely from their aggravated-identity-theft convictions.[5] Emmanuel stresses that he was acquitted of aggravated identity theft and thus the

---

[5]Defendant Emmanuel concedes that codefendant Bernadel is not a comparator because he pled guilty before trial, cooperated with the government, and testified against Emmanuel at trial.

district court should have considered solely Mathieu's and St. Louis's sentences for their fraud conspiracy convictions. Emmanuel claims that, if the district court had properly weighed his culpability in the unemployment-benefits fraud scheme, it would have sentenced him in between St. Louis's time-served sentence on the fraud conspiracy count and Mathieu's 12-month sentence on the fraud conspiracy count.

After review, we conclude that Emmanuel's argument fails for two main reasons. First, § 1028A(b)(3) does not apply to Emmanuel and his total sentence because he was not convicted of, or sentenced for, aggravated identity theft. While the district court was required to consider § 1028A(b)(3)'s mandate when sentencing Mathieu and St. Louis—both of whom had been convicted of aggravated identity theft—there was no reason for it to consider § 1028A(b)(3) in sentencing Emmanuel. Emmanuel essentially concedes this point later in his brief, stating that the district court "fail[ed] to consider the application of Section 1028A(b)(3) in the sentencing of co-defendants Mathieu and St. Louis." However, this is Emmanuel's appeal, not Mathieu's or St. Louis's appeal. Therefore, the district court did not err in its application, or non-application, of § 1028A(b)(3) in its § 3553(a)(6) disparity consideration.

Second, the record shows that the district court explicitly considered Emmanuel's disparity argument under § 3553(a)(6), but rejected it on valid

grounds. Contrary to Emmanuel's contention, the district court did not compare in a rote manner Emmanuel's 30-month sentence to Mathieu's 36-month sentence or St. Louis's 24-month sentence. Rather, the district court articulated several reasons why Emmanuel was not similarly situated to his codefendants and thus why it rejected Emmanuel's unwarranted disparity claim. These reasons included that: (1) Emmanuel and his codefendants played different roles in the fraud scheme; (2) Emmanuel and his codefendants were responsible for different loss amounts; and (3) Emmanuel went to trial whereas his codefendants pled guilty. As to loss amount, Emmanuel's loss amount not only included the losses from the unemployment-benefits fraud conspiracy but also losses from his bank fraud conviction. Unlike Emmanuel, his codefendants were not charged or convicted of bank fraud. Because neither Mathieu nor St. Louis were similarly situated codefendants, Emmanuel has not shown any unwarranted disparities. See, e.g., United States v. Jayyousi, 657 F.3d 1085, 1117-18 (11th Cir. 2011) (explaining that a defendant who goes to trial and is convicted of more serious offenses is not similarly situated to codefendants who plead guilty to less serious offenses).

Thus, the district court properly rejected Emmanuel's unwarranted disparity argument and did not misapply § 3553(a)(6) or violate § 1028A(b)(3) when it sentenced Emmanuel. Accordingly, Emmanuel has not shown any procedural error.

14

## B.    Substantive Reasonableness

This Court will vacate a sentence on substantive reasonableness grounds only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). A district court may attach great weight to one § 3553(a) factor over others, and the weight it attaches to any specific factor is committed to its sound discretion. United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015). When the district court chooses a sentence within the advisory guidelines range, we typically expect the sentence to be a reasonable one. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009).

Here, Emmanuel's total 30-month sentence falls at the very bottom of his advisory guidelines range of 30 to 37 months' imprisonment. See id. Nevertheless, Emmanuel argues that his within-guidelines-range sentence is still substantively unreasonable based on the same disparity-related arguments that we rejected above.[6] Moreover, the district court was well within its substantial

_____

[6]Defendant Emmanuel asserts that his sentence is substantively unreasonable because: (1) he was acquitted of aggravated identity theft; (2) the district court misapplied § 3553(a)(6) and, more specifically, § 1028A(b)(3) when it compared Mathieu's and St. Louis's total sentences and imposed a disparate sentence; (3) Mathieu (who was the most culpable) and St. Louis (who was equally culpable) received lesser sentences on their fraud conspiracy

15

discretion to weigh more heavily other considerations, including: (1) Emmanuel's high loss amount of $154,832.50; (2) his involvement in multiple types of fraud and additional bank fraud conviction; (3) his recruitment of other co-conspirators into the fraud scheme; and (4) his advisory guidelines range, which was already lowered in his favor.  See 18 U.S.C. § 3553(a)(1)-(2), (4); Rosales-Bruno, 789 F.3d at 1254.  Accordingly, Emmanuel has not shown that "the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of [this] case."  See Irey, 612 F.3d at 1190 (quotation marks omitted).

### III. CONCLUSION

Emmanuel has failed to show any procedural or substantive unreasonableness in his sentencing.  Thus, we affirm his total 30-month prison sentence.

**AFFIRMED.**

---

convictions; and (4) Emmanuel's additional bank fraud conviction caused a loss of less than $2,000.