[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13192
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-00178-RWS-LTW-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUMBERTO VEGA-GUTIERREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 1, 2020)

Before NEWSOM, LAGOA and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Humberto Vega-Gutierrez appeals his below-guidelines-range sentence of 180 months' imprisonment imposed for his various drug-conspiracy, drug-possession, and firearm-possession offenses.  On appeal, Vega-Gutierrez challenges the substantive reasonableness of his total sentence.  After review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct[1]

From early-2014 to mid-2015, defendant Vega-Gutierrez, who was 69 years old at the time, participated in a methamphetamine-trafficking scheme with his two codefendants, Israel Vega-Perez and Anthony Robertson.  During this time period, law enforcement observed and documented six transactions.  Each transaction generally followed the same pattern—codefendant Vega-Perez negotiated a methamphetamine deal with a buyer and coordinated a meeting between the buyer and defendant Vega-Gutierrez, who then conducted the transaction at one of his three residences or, in one instance, a gas station.  Codefendant Robertson was a recurring buyer in the scheme.

---

[1]The record of the offense conduct is based on the unobjected-to facts contained in Vega-Gutierrez's presentence investigation report and the prosecution's recitation of its factual basis supporting the charges at the change-of-plea hearing.

In the six documented drug transactions, defendant Vega-Gutierrez supplied the buyers these amounts of methamphetamine: (1) 200.3 grams during a January 2014 sale; (2) 988.6 grams during a January 2014 sale with codefendant Robertson, who previously had purchased about three kilograms; (3) 676.2 grams during a March 2014 sale; (4) 99 grams during an April 2014 sale; (5) 28.35 grams during another April 2014 sale; and (6) 27.3 grams during a July 2015 controlled buy.

Upon defendant Vega-Gutierrez's arrest and a search of one of his residences, law enforcement officers discovered 233.8 grams of methamphetamine, $4,322 in cash, two digital scales, three cellphones, a device that detects counterfeit bills, and three pistols, two of which were loaded.  All in all, Vega-Gutierrez's six drug sales and the drugs found at the residence yielded an approximate total of 5.22 kilograms (5,219.35 grams) of methamphetamine.

## B.    Indictment and Psychiatric Commitment

Vega-Gutierrez was indicted on these charges: (1) one count of conspiracy to possess with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A) and 846 (Count 1); (2) two counts of distributing at least 50 grams of methamphetamine, in violation of § 841(a), (b)(1)(A), and 18 U.S.C. § 2 (Counts 2-3); (3) two counts of possessing with intent to distribute at least 50 grams of methamphetamine, in violation of §§ 841(a),

(b)(1)(A), and 2 (Counts 4-5); and (4) one count of possessing a firearm as an alien unlawfully present in the United States, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2) (Count 6).  Codefendant Vega-Perez was also charged in Counts 1 through 5, and codefendant Robertson was charged in Counts 1 and 4.

Defendant Vega-Gutierrez initially pled not guilty and moved the court to order a psychiatric examination and a hearing to determine whether he was competent to stand trial.  Due to concerns regarding Vega-Gutierrez's deficits in cognition, memory, and communication, the district court granted his motion for a psychiatric examination, stayed his case, and ordered him committed for treatment. After about nine months of commitment, Vega-Gutierrez was re-examined and adjudicated competent to stand trial.

Together, Vega-Gutierrez's various psychiatric examinations showed that he had suffered from: (1) a previous concussion; (2) concussion-related symptoms, including short-term memory loss, dementia, dizziness, disorientation, hearing loss, blurry vision, loss of speech, and hearing voices and sounds; (3) borderline intellectual functioning; (4) significant intellectual deficits in verbal language, cognitive efficiency, and thinking ability; (5) cognitive disorder, not otherwise specified; and (6) mental-health diagnoses of generalized anxiety disorder, major depressive disorder - moderate, and somatic symptom disorder.  These examinations also revealed that Vega-Gutierrez was from Mexico, grew up in

4

poverty, had almost no formal education, was unfamiliar with the U.S. justice system, spoke no English, and even had difficulty effectively communicating in Spanish.[2]

## C.     Guilty Plea

In February 2019, after being adjudicated competent to stand trial, Vega-Gutierrez pled guilty to Counts 1, 2, 3, 5, and 6, without the benefit of a plea agreement.  At the change-of-plea hearing, the government provided the above factual basis supporting the charges against Vega-Gutierrez.  While Vega-Gutierrez initially indicated that he could not remember the factual details of his offense conduct, he confirmed that he had worked with others to distribute methamphetamine.  Moreover, Vega-Gutierrez's attorney stated that Vega-Gutierrez was not contesting the government's evidence and recognized that the government had the necessary facts and evidence to convict him.  The district court characterized Vega-Gutierrez's plea as an Alford-type[3] plea.  The district court

---

[2]The forensic psychiatrist, who conducted Vega-Gutierrez's final examination, opined that the extent of Vega-Gutierrez's cognitive, memory, and communication deficits were likely less severe than reported given his abilities: (1) to function in competency restoration classes; (2) to talk on the phone with his friends and family without significant issues; (3) to communicate directly with the Spanish interpreter; and (4) to remember several important details when asked.

[3]North Carolina v. Alford, 400 U.S. 25, 34-38, 91 S. Ct. 160, 166-68 (1970) (holding that a defendant may voluntarily, knowingly, and understandingly plead guilty and consent to be sentenced even if he is unwilling to admit to his participation in the crime when he is represented by competent counsel, he intelligently concludes that his interests require a guilty plea, and the record strongly evidences his guilt).

confirmed with Vega-Gutierrez's attorney that: (1) she was comfortable with Vega-Gutierrez's acceptance of the plea despite his memory issues; (2) Vega-Gutierrez wished to plead guilty; and (3) he understood the charges and evidence against him. The district court found that there was a sufficient factual basis supporting the guilty plea, accepted Vega-Gutierrez's knowing and voluntary plea, and adjudicated him guilty.[4]

## D.    Presentence Investigation Report ("PSI")

Vega-Gutierrez's PSI grouped his convictions and assigned him a base offense level of 36 because his offenses involved between 30,000 and 90,000 kilograms of converted drug weight. Specifically, Vega-Gutierrez's involvement with 5.22 kilograms (5,219.35 grams) of methamphetamine equated to 48,710.3 kilograms of converted drug weight. His base offense level of 36 was: (1) increased by two levels because he possessed several firearms; (2) increased by two levels because he maintained at least one residence for the purpose of manufacturing or distributing a controlled substance; and (3) decreased by three levels because he accepted responsibility, which resulted in a total offense level of 37. Vega-Gutierrez's total offense level of 37 and criminal history category of I yielded an advisory guidelines range of 210 to 262 months' imprisonment.

---

[4]In this appeal, Vega-Gutierrez does not challenge his guilty plea.

**E.    Sentencing Hearing**

At the sentencing hearing, the district court confirmed that there were no unresolved PSI objections and adopted the PSI's factual findings, guidelines calculations, and 210-to-262-month advisory guidelines range.[5]  The government argued that a 210-month sentence was reasonable because: (1) Vega-Gutierrez was 69 years old at the time of the offenses and should have known better; (2) he served as a supplier in the methamphetamine-trafficking conspiracy; (3) he supplied methamphetamine to at least six individuals during the relevant time frame; (4) methamphetamine was a serious and dangerous drug; (5) he used a number of residences for distribution; (6) he possessed drugs, cash, drug paraphernalia, and loaded firearms at one of those residences; and (7) his less culpable codefendant Robertson, who also had health issues, received a 160-month sentence.[6]

Defendant Vega-Gutierrez asked the district court to impose a below-guidelines-range sentence of 120 months, which was the statutory mandatory minimum term of imprisonment.  Vega-Gutierrez argued that he played a lesser role in the offenses because, while he supplied drugs to buyers, he did so only

---

[5]Vega-Gutierrez's PSI objections, none of which are relevant to this appeal, were resolved by the probation officer prior to the sentencing hearing.

[6]Robertson pled guilty to Count 1 and was sentenced to 160 months' imprisonment.

under codefendant Vega-Perez's direction and lacked the cognitive ability to be a drug supplier on his own.  Next, Vega-Gutierrez highlighted his poor health condition and his intellectual, memory, and communication deficits. Vega-Gutierrez also contended that he was unlikely to reoffend given his older age, lack of criminal history, impressionable role in the offense conduct, and desire to return to his family.  Further, Vega-Gutierrez compared himself to codefendant Robertson, who was not cognitively impaired and was a criminal history category V.

The government responded that defendant Vega-Gutierrez remained actively involved in the drug distribution even after his 2014 concussion, that his difficulty in communicating in English was immaterial because codefendant Vega-Perez acted as an interpreter during transactions with English-speaking buyers, and that Vega-Gutierrez likely would continue to receive treatment for his various conditions while in prison.

Before pronouncing its sentence, the district court emphasized that Vega-Gutierrez's offenses were "very serious" because he was involved with "a fairly substantial distribution of drugs," those drugs harmed its users, and the drug trade caused law enforcement issues.  The district court recognized that several of Vega-Gutierrez's history and characteristics were mitigating, including his older age, various mental and physical health conditions, lack of criminal history, and

likelihood of deportation from the United States upon the completion of his sentence. As to specific deterrence, the district court sought to impose a sentence that would last until Vega-Gutierrez was at a point in his life when he would be much less likely to reoffend. The district court also briefly acknowledged the goal of general deterrence. As to sentencing disparities, the district court considered codefendant Robertson's 160-month sentence, which was below his 188-to-235-month advisory guidelines range and accounted for "his health issues and other factors."

While taking into account the mitigating factors of Vega-Gutierrez's mental and physical health, age, and likelihood of deportation, the district court stated that Vega-Gutierrez's sentence should be proportionate to his higher degree of culpability as compared to codefendant Robertson. Accordingly, the district court varied downward from the 210-to-262-month advisory guidelines range and sentenced defendant Vega-Gutierrez to a total 180-month sentence of imprisonment—which consisted of concurrent terms of 180 months as to Counts 1, 2, 3, and 5, and 120 months as to Count 6—followed by a total of five years' supervised release. Vega-Gutierrez and the government both objected to the sentence's substantive reasonableness.

This is Vega-Gutierrez's appeal.

9

## II. DISCUSSION

Defendant Vega-Gutierrez argues that his below-guidelines-range sentence of 180 months is substantively unreasonable. This Court reviews the reasonableness of a sentence under a deferential abuse-of-discretion standard employing a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). First, we examine whether the district court committed any significant procedural error. Id. Because Vega-Gutierrez claims no procedural error, we move to the second step of determining whether his sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.[7] Id. The party challenging the sentence—here, Vega-Gutierrez—carries the burden of showing that the sentence is unreasonable. Id. at 1189.

We will vacate a sentence as substantively unreasonable only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). While the district court must consider all the applicable § 3553(a)

---

[7]The § 3553(a) factors include, of relevance: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's future crimes; (5) the advisory guidelines range; and (6) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(1)-(2), (4), (6).

10

factors, it has wide discretion in deciding how much weight to assign to any particular sentencing factor. United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015). In fact, a district court is entitled to attach great weight to one § 3553(a) factor over others. Id.

When the district court selects a sentence that falls within the advisory guidelines range, we generally expect the chosen sentence to be a reasonable one. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009). Further, "[a] sentence imposed well below the statutory maximum penalty is an[other] indicator of a reasonable sentence." United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014).

Here, Vega-Gutierrez's 180-month sentence falls 30 months below the bottom of his advisory guidelines range of 210 to 262 months' imprisonment. See Docampo, 573 F.3d at 1101. Vega-Gutierrez's below-guidelines-range sentence is also substantially below the statutory maximum penalty of life imprisonment for Counts 1, 2, 3, and 5. See 21 U.S.C. § 841(b)(1)(A)(viii) (providing a statutory maximum term of life imprisonment for a violation of § 841(a) involving 50 grams or more of methamphetamine); Stanley, 739 F.3d at 656. Nevertheless, Vega-Gutierrez argues that his sentence is substantively unreasonable because the district court failed to properly consider his older age, mental and physical health conditions, minimal education, difficulty communicating in English, lack of

11

criminal history, and lesser role as a supplier working under codefendant Vega-Perez's leadership and direction.

Contrary to Vega-Gutierrez's contention, all of these circumstances were discussed during the sentencing hearing, and the district court explicitly deemed as mitigating factors Vega-Gutierrez's older age, mental and physical health conditions, and lack of criminal history, and departed 30 months downward from his advisory guidelines range for those reasons. See 18 U.S.C. § 3553(a)(1). The district court was well within its substantial discretion to weigh less heavily Vega-Gutierrez's remaining concerns and to weigh more heavily: (1) the seriousness of his drug-trafficking offenses, which involved approximately 5.22 kilograms (5,219.35 grams) of methamphetamine, a drug that harms its users and poses law enforcement issues; (2) Vega-Gutierrez's significant role as a supplier within the drug-trafficking offenses; and (3) avoiding any unwarranted sentencing disparity between him and his less-culpable codefendant Robertson, who was a buyer rather than a supplier and received a 180-month sentence. See id. § 3553(a)(1)-(2), (6); Rosales-Bruno, 789 F.3d at 1254. Moreover, the district court did not err when it focused on avoiding any unwarranted sentencing disparity solely between defendant Vega-Gutierrez and codefendant Robertson, and in not considering codefendant Vega-Perez because codefendant Vega-Perez had yet to be

12

sentenced.[8]  See United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (explaining that there is no unwarranted sentencing disparity between a convicted and sentenced defendant and a codefendant who, for example, has yet to be sentenced).

Therefore, Vega-Gutierrez has not shown that "the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of [this] case."  See Irey, 612 F.3d at 1190 (quotation marks omitted).  Because Vega-Gutierrez has not shown that his sentence is substantively unreasonable, we affirm his 180-month sentence.

**AFFIRMED.**

---

[8]In any event, in late February 2020, after pleading guilty to Count 1, codefendant Vega-Perez was sentenced to 210 months' imprisonment, which was 30 months higher than defendant Vega-Gutierrez's sentence.

13