[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10365
Non-Argument Calendar

_____

D.C. Docket No.  1:16-cr-00341-MHC-CMS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERBERT JONATHAN CASTILLO JUAREZ,
a.k.a. Tomic Jona,
a.k.a. Jonathan,
a.k.a. Jona,
a.k.a. Tito,

Defendant-Appellant.

_____

No. 20-10409
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-00341-MHC-CMS-1

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

                            versus

PAOLA VALENZUELA AREVALO,
a.k.a. Pio Val,
a.k.a. Pao,
a.k.a. Nena,
a.k.a. Claudia,
a.k.a. Licenciada,

                                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(April 7, 2021)

Before JILL PRYOR, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

    In these consolidated appeals, Paola Valenzuela Arevalo (Valenzuela) and

Herbert Jonathan Castillo Juarez (Castillo), a married couple, each appeal the

sentence of imprisonment imposed after they pleaded guilty to drug-trafficking crimes involving the importation of heroin and cocaine into the United States. Valenzuela and Castillo argue that the district court made several procedural errors at sentencing, including (1) calculating their Sentencing Guidelines offense level based on the actual amount of heroin found on drug couriers captured in the United States, when the defendants claim to have believed that they were trafficking cocaine, at least in part; (2) applying a four-level enhancement to their Guidelines offense level for being organizers or leaders of the drug trafficking operation; (3) admitting hearsay evidence regarding the death of an unindicted coconspirator; and (4) permitting the deceased coconspirator's family and friends to speak at their sentencing hearing.  The defendants also contend that their 264-month sentences were substantively unreasonable.  We affirm.

## I.

Between July and September 2016, several individuals who were caught trying to smuggle heroin into the United States from Guatemala told authorities that they were working for the defendants.  Evidence provided by the couriers and retrieved from various cell phones and social media platforms showed that the defendants recruited or met with the couriers, provided plane tickets and itineraries for their travel, gave them the heroin that they carried concealed in their luggage or in the form of pellets that they swallowed, told them what to do if they passed the

3

pellets early, and monitored their progress throughout their trips. The defendants also provided haircuts, clothing, and Xanax for some of the couriers to help them avoid detection.

The defendants' drug-trafficking enterprise came to an end in August 2016, when they were caught smuggling cocaine into Zurich. After serving time in Switzerland, the defendants were extradited to the United States and charged in an eight-count indictment with conspiracy to possess with intent to distribute heroin and cocaine, conspiracy to import heroin and cocaine, importation of heroin into the United States, and possession with intent to distribute heroin. They entered guilty pleas to all eight counts, and after a joint sentencing hearing, they were each sentenced to 264 months in prison followed by five years of supervised release. Both defendants appealed, raising similar arguments and adopting one another's briefs. We granted the government's motion to consolidate the appeals, and we now resolve both appeals in this opinion.

## II.

We review a district court's factual findings related to sentencing, including drug quantities attributable to the defendant and the defendant's role in the offense, for clear error. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012); *United States v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009). We review the court's application of the Sentencing Guidelines to those facts de novo. *Docampo*,

4

573 F.3d at 1096.  We review the district court's evidentiary rulings for an abuse of discretion.  *Id.*  We also review the reasonableness of the final sentence for an abuse of discretion, evaluating "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)."  *Id.* (citation omitted).

### III.

### A.

By pleading guilty to the charges in the third superseding indictment, the defendants admitted that they conspired to possess with intent to distribute, and to import into the United States, controlled substances.  They admitted that the conspiracy involved both heroin and cocaine, and they admitted that they in fact possessed with intent to distribute heroin and did import heroin into the United States on multiple occasions, by aiding and abetting each other, drug couriers, and drug suppliers.  At sentencing, they conceded that the couriers working for them were caught with or admitted to making previous trips carrying a total of 19.31 kilograms of heroin.  And yet each of them objects to the district court's decision to hold them responsible for 19.31 kilograms of heroin in calculating their base offense level under the Sentencing Guidelines.  They claim that they believed that some or all of the couriers were carrying cocaine—which corresponds to a lower offense level under the Guidelines—and they contend that the district court should

have required proof that they knew the substance they trafficked was heroin before holding them accountable for that drug. Our precedents, and the Guidelines themselves, say otherwise.

As we have said before, "a defendant need not know the type of drug involved in a drug offense to receive a base offense level based on that type of drug." *Almedina*, 686 F.3d at 1317. That is because "those who, acting with a deliberate anti-social purpose in mind, become involved in illegal drug transactions, assume the risk that their actions will subject them to enhanced criminal liability." *United States v. Alvarez–Coria*, 447 F.3d 1340, 1344 (11th Cir. 2006) (quoting *United States v. Gomez*, 905 F.2d 1513, 1514–15 (11th Cir. 1990)). Our precedents are consistent with the commentary to the "relevant conduct" guideline, which states that a defendant is accountable for the specific controlled substance that he carries even if he doesn't know what kind of drug it is, as long as he knows that he is carrying a controlled substance. U.S.S.G. § 1B1.3, comment. (n.4(A)(i)).

And contrary to Valenzuela's argument, the district court was not required to find that the specific type of controlled substance was reasonably foreseeable to the defendants under the guideline applicable to the conduct of others.[1] *See* U.S.S.G.

---

[1] That is not to say that it was *not* reasonably foreseeable to the defendants that the drug they gave the couriers was heroin. At least two of the couriers, who between them accounted for more than half of the heroin attributed to the defendants, were aware that the drug the defendants

§ 1B1.3(a)(1)(B). The "relevant conduct" guideline provides that a defendant's Guidelines offense level should be calculated based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; *and*" the acts of others in a "jointly undertaken criminal activity" if the latter acts were, among other things, "reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(A)–(B) (emphasis added). The defendants admitted to aiding and abetting each other, the couriers, and their drug suppliers in importing heroin into the United States, and the evidence amply supports their admission that they were directly involved in those crimes. They recruited, instructed, and paid the couriers; provided the heroin they carried; made or facilitated their travel arrangements; took steps to help them avoid detection; and coached them through any difficulty they encountered during their trips. The district court did not clearly err in finding that the defendants were responsible under § 1B1.3(a)(1)(A) for their own conduct in possessing with the intent to distribute 19.31 grams of heroin and in aiding, abetting, counseling, commanding, inducing, procuring, or willfully causing the importation of that quantity of heroin into the United States.

---

gave them was heroin—which makes it almost certain that the defendants knew it too—and one of the investigating officers testified that heroin was much more profitable than cocaine in the United States. But because we conclude that the defendants were appropriately held responsible under § 1B1.3(a)(1)(A) for the heroin that they trafficked, we need not decide whether § 1B1.3(a)(1)(B) also applies.

7

B.

Both defendants also contend that the district court clearly erred in finding that they were organizers or leaders of the drug-trafficking activity, which finding resulted in a four-level enhancement to their Guidelines offense level. Section 3B1.1 calls for a four-level increase in a defendant's base offense level if she "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A three-level enhancement applies if the defendant was a manager or supervisor, but not an organizer or leader, under the same circumstances. *Id.* § 3B1.1(b). To qualify for an adjustment under § 3B1.1, the defendant "must have been the organizer, leader, manager or supervisor of one or more other participants." *Id.* § 3B1.1, comment. (n.2). The defendants concede that their criminal activity involved five or more participants, but they argue that they were, at most, managers or supervisors in the drug-trafficking organization.

District courts examine whether a defendant was an organizer or leader, as compared to a manager or supervisor, by considering the following factors: (1) the exercise of decision-making authority, (2) the nature of the defendant's participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the

8

illegal activity, and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4); *United States v. Caraballo*, 595 F.3d 1214, 1231–32 (11th Cir. 2010). There is no requirement that all of these factors be present for the enhancement to apply, and there may be more than one leader in the organization. *United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir. 2018).

Substantial evidence supports the district court's finding that several of these factors apply here. One of the couriers explained that Desi Caballero Chavez (Caballero) owned the narcotics, Valenzuela and Castillo obtained couriers to transport the drugs, and "clients" in New York and Philadelphia bought the drugs. Evidence obtained from cooperating codefendants, various messaging platforms, and recorded phone calls showed that while Caballero was involved with funding the operation and contacted Valenzuela frequently for updates on some of the trips, Valenzuela and Castillo were generally in charge of the couriers. They exercised decision-making authority by deciding who to hire and what should be done when the couriers encountered problems during their trips. Although they smuggled cocaine to Europe themselves, their participation in the business of transporting heroin to the United States was as directors—they hired five or more couriers, gave them detailed instructions, and monitored them closely during their travel. They recruited several of the couriers themselves, and they offered commissions for those they hired to recruit others. And the degree of authority they exercised over

the couriers was essentially complete, at least until they arrived at their destinations—they told them what to wear, injected them with antinausea medication so they could swallow heroin pellets or packed the heroin in their luggage, obtained narcotics or Xanax to keep them calm, took them to the airport, paid them and gave them money for expenses, required them to check in at every stage of their travel, directed or approved any changes to their itineraries, and gave them instructions on how to avoid detection and how to clean and re-swallow or conceal any heroin pellets that they passed early.  On this record, the district court did not clearly err in finding that Valenzuela and Castillo were leaders or organizers in the drug-trafficking activity.

## C.

The defendants contend that the district court abused its discretion by admitting evidence at sentencing related to the death of Frederick Henry Bell Mix IV, a young man whom they apparently intended to use as a courier, but who died in Guatemala under suspicious circumstances before his planned departure.  The government argued that the defendants were responsible for Mix's death and that the calculation of their Guidelines sentencing ranges should include a cross reference for murder under § 2D1.1(d)(1).  In support of this argument, the government presented documents obtained from Guatemala, including an autopsy report and a fingerprint comparison report, and hearsay testimony regarding

10

statements made by Caballero after his arrest. The district court admitted the evidence but ultimately determined that it lacked sufficient indicia of reliability and declined to consider it or to apply the murder cross reference.

In calculating a defendant's Guidelines sentence, the district court must give the parties an opportunity to present information and argument relevant to any disputed factor that is important to the sentencing determination. U.S.S.G. § 6A1.3(a). The district court has discretion to consider relevant information at sentencing—including hearsay evidence—regardless of its admissibility at trial, "provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.*; *see United States v. Baptiste*, 935 F.3d 1304, 1315 (11th Cir. 2019). To succeed on a challenge to the district court's admission of hearsay evidence at sentencing, "a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). We have held that where "the record reveals no 'explicit reliance' on the challenged evidence" by the sentencing judge, the defendant has not met his burden of showing that the evidence served as the basis for his sentence. *United States v. Rodriguez*, 765 F.2d 1546, 1555 (11th Cir. 1985) (citation omitted).

Here, the defendants have failed to meet their burden of proving that the district court relied on hearsay evidence related to Mix's death when determining

their sentences. They argue that the government's allegations that they were involved in Mix's murder influenced the district court's sentencing decision to sentence them in the middle of the applicable Guidelines range instead of at the lower end, but they have not pointed to any record evidence showing either explicit or implicit reliance on the challenged evidence. To the contrary, the district court found that the documents from Guatemala and the hearsay testimony implicating the defendants in Mix's death—or at least, in disposing of his body—lacked sufficient indicia of reliability and explicitly stated that it would not consider that evidence. We see no reason to doubt either the court's explicit statements about the evidence that it considered or the court's ability to untangle the challenged hearsay evidence about Mix's death from other, unchallenged statements about his involvement as a potential courier in the defendants' criminal enterprise.

## D.

The defendants also argue, for the first time on appeal, that the district court erred in permitting Mix's mother to present "victim impact" letters from herself and one of Mix's girlfriends and allowing the mother and a friend of the mother to speak at their sentencing hearing. Mix's mother and girlfriend urged the court to hold the defendants responsible for Mix's death by sentencing them to life in prison, and Mix's mother's friend said that the court should "never let them out" of

12

prison because they "trafficked their own children," presumably referring to evidence that the defendants' son was involved in their drug-trafficking operation.

When a defendant fails to object to an alleged error before the district court, we review the argument on appeal for plain error only. *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. DiFalco*, 837 F.3d 1207, 1220 (11th Cir. 2016). Under this standard of review, the appellant must prove that (1) an error occurred; (2) the error was plain or obvious; and (3) the error affected the defendant's substantial rights, "which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (citation omitted). If these three conditions are satisfied, we may correct the error if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.

The defendants have not met their burden of showing that the speeches and letters by Mix's mother and friends influenced the outcome of the sentencing proceedings. The district court expressed sympathy to Mix's mother and friends for their loss, but it explained that it was bound by the evidence and the law and believed that the sentence it imposed was fair and reasonable under the circumstances. The court's statements were consistent with its rulings that the hearsay evidence of the defendants' involvement in Mix's death was unreliable and would not be considered. The district court did not apply the murder cross

13

reference in calculating the defendants' Guidelines sentencing range, and it gave no indication that it considered Mix's death when selecting a sentence within that range. And although the district court referred to the defendants' employing their son in their drug business when explaining its sentencing decision, undisputed statements in the defendants' presentence investigation reports and other unchallenged evidence had already established that the defendants' son was involved in their drug-trafficking activities before Mix's mother's friend said that the defendants had "trafficked their own children." Because the defendants have not shown that the victim impact statements affected their substantial rights, they have not met their burden of showing reversible error under the plain-error standard.

IV.

Last, the defendants argue that their 264-month sentences are substantively unreasonable. The defendants bear the burden of demonstrating that their sentences are unreasonable in light of the record, the factors listed in 18 U.S.C. § 3553(a), and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

A sentencing court must consider the nature and circumstances of the defendant's offense and the defendant's history and characteristics and impose a sentence that is sufficient, but not greater than necessary, to comply with the

statutory purposes of sentencing.  18 U.S.C. § 3553(a).  Those purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from further crimes by the defendant.  *Id.* § 3553(a)(2).  The court must also consider the kinds of sentences available, the defendant's Guidelines sentencing range, applicable guidelines and policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and any need for restitution.  *Id.* § 3553(a)(3)–(7).  A district court may abuse its discretion in sentencing if it fails to consider one or more relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or considers all the appropriate factors but balances them unreasonably.  *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).  We will vacate a sentence for substantive unreasonableness only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (citation omitted).

The district court here appropriately used the Guidelines sentencing range of 235–293 months' imprisonment as its "starting point and the initial benchmark" and considered the parties' competing arguments—the defendants' requests for

15

below-Guidelines, statutory-minimum sentences of 120 months and the government's request for above-Guidelines sentences of 360 months. *Gall v. United States*, 552 U.S. 38, 49 (2007). After discussing each of the § 3553(a) sentencing factors, the court concluded that a mid-range Guidelines sentence was "sufficient, but not greater than necessary" to serve those objectives. Although a sentence in the Guidelines range is not entitled to a presumption of reasonableness, we ordinarily expect that a Guidelines sentence will be reasonable. *United States v. Foster*, 878 F.3d 1297, 1309 (11th Cir. 2018). Such is the case here.

Both Valenzuela and Castillo argue that the district court must have given significant weight to Mix's death and alleged murder, despite the court's ruling that the government had not presented reliable evidence proving that his death was caused by their conduct. As we have already said, however, we find no reason to disbelieve the district court's express statement that it did not consider evidence of Mix's death in determining the defendants' sentences.

Both defendants point out that several of their codefendants received substantially shorter sentences than theirs, and Castillo presents statistical information showing that most defendants in drug-related cases are sentenced below the applicable Guidelines range. Neither comparison is apt. "When we consider disparity in sentencing, we first ask whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v.*

16

*Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). The codefendants here were all employed by the defendants or by their drug supplier as couriers—their level of responsibility for the criminal activity charged was much lower than that of the defendants. The codefendants who were sentenced before Valenzuela and Castillo also cooperated with the government, and several of them received lower sentences as a result of their cooperation. Thus, the codefendants were not similarly situated to Valenzuela and Castillo, and there is no unwarranted disparity between their sentences and the sentences that Valenzuela and Castillo received. *Cf. United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) (no unwarranted disparity between the sentence of a defendant who pleaded not guilty and went to trial and the "substantially lower" sentences of cooperating codefendants). And the statistical information cited by Castillo simply provides no basis for comparison— Valenzuela and Castillo cannot be similarly situated to all other drug defendants, many of whom presumably were convicted of offenses involving less serious substances or consisting of a single transaction or possession.

Valenzuela argues that the district court gave insufficient weight to her personal history of childhood abuse, poverty, and family tragedy, and gave undue weight to evidence that the defendants used minors and drug addicts as couriers and involved their minor son in their drug business. "The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court."

17

*United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).  We can find no error of judgment in the district court's consideration of the § 3553(a) factors here. The district court considered Valenzuela's history, but it concluded that while her "incredibly sad" childhood might partly excuse conduct that put only herself at risk, it could not justify her ongoing participation in a scheme that routinely endangered others.  In short, the 264-month sentences imposed by the district court, which were both within the defendants' Guidelines range and well below the statutory maximum sentence of life in prison, were not substantively unreasonable. *See id.* at 1310 ("A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness.").

V.

For the foregoing reasons, we conclude that the district court did not abuse its discretion by sentencing Valenzuela and Castillo to 264 months' imprisonment, and we therefore affirm their convictions and sentences.

**AFFIRMED.**